## Norfolk
MICHAEL JOSEPH DIEHL
v.
COMMONWEALTH OF VIRGINIA
No. 1125-87-1
Decided October 24, 1989

COUNSEL

Paul E. Sutton, II, for appellant.

David A. Rosenberg, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

BAKER, J.—Michael Joseph Diehl (appellant) appeals from judgments of the Circuit Court of the City of Virginia Beach (trial court) which approved jury verdicts convicting him of first degree murder, abduction, simple assault and felony child neglect. He presents six issues for our consideration. As stated by appellant the issues are: (1) whether a legal, custodial parent of the victim/child may be found guilty of abduction and felony murder of that child pursuant to § 18.2-47 of the Code of Virginia; (2) whether

the Commonwealth's Exhibit 5 was irrelevant and therefore inadmissible; (3) whether the Commonwealth proceeded against him upon indictments returned by a biased grand jury; (4) whether cameras may be allowed in a courtroom pursuant to Code § 19.2-266 where the defendant demonstrates good cause for their exclusion; (5) whether Code § 19.2-266, on its face, violates the equal protection clause of the United States Constitution; and (6) whether Code § 19.2-266, as applied to this case, violated the appellant's right to equal protection of law.

Michael and Karen Diehl were the custodial, natural parents of four children and the custodial, adoptive parents of thirteen other children. One of the adopted children was thirteen year old Andrew Dominick Diehl (victim).[1] In September 1986, traveling in a converted school bus, the Diehls and their seventeen children moved to Virginia and settled in Virginia Beach. Their only dwelling place was the bus in which they arrived. The Diehls believed the victim needed discipline due to misbehavior. From the day the Diehls arrived in Virginia to the day of the victim's death the victim almost continuously was shackled to the floor of the bus, totally without clothing. He was restrained by a pipe clamp on one hand, a handcuff on the other and by a rope around his feet. While thus shackled both parents from time to time paddled the victim's bare buttocks until they bled, administering as many as two hundred blows per session. In addition, in appellant's presence, Karen Diehl struck the victim as many as twenty blows to his head with the same instrument used to paddle his naked buttocks. She also forced the victim to eat his feces and drink his urine.

When rescue workers came to the bus on October 24, 1986, they found the victim on the floor of the bus, unconscious and without a pulse. The victim was taken to a hospital where he died five days later. An autopsy was performed on the victim and the cause of death was stated to be multiple, forceful blows to the head.

## I.

Appellant argues that a custodial parent may not be prosecuted for the felony murder of his or her child, using abduction as

---

[1] On occasion the record spells the victim's middle name "Dominique."

the underlying felony as set forth in Code § 18.2-47. He concedes that the evidence was sufficient to sustain a conviction of one who is not such parent. *See Scott v. Commonwealth*, 228 Va. 519, 323 S.E.2d 572 (1984); *Simms v. Commonwealth*, 2 Va. App. 614, 346 S.E.2d 734 (1986). As applied to the facts contained in this record, we construe the statute to authorize the prosecution of a custodial parent for abduction of his child and also to allow use of that abduction as the underlying felony for prosecution of felony murder.

In *Scott*, 228 Va. at 526, 323 S.E.2d at 576, the Court reviewed Code § 18.2-47 and held that it superseded the common law and should be construed according to its plain meaning and evident intent. The statute provides that *any person*, except a law enforcement officer in the performance of his duty, may be prosecuted for violation of its provisions.[2] If one is to be excluded from prosecution, the exclusion must be found in the statute.[3] Here, no such exclusion may be found.

Appellant further argues that a fair reading of the second paragraph of the statute discloses that even if the facts permit him to be prosecuted under Code § 18.2-47, he could be punished only as a misdemeanant if convicted; therefore, he argues, the conviction would not be an underlying felony which would support his felony murder conviction. We disagree. The provision of Code § 18.2-47 on which appellant predicates that argument is contained in the second paragraph and provides that if the offense is "committed by the parent of the person abducted and punishable as contempt of court in any proceeding then pending," the offense is punishable as a Class 1 misdemeanor. There was no "proceeding then pending" at the time of this offense; therefore, the misdemeanor provision is inapplicable.

Appellant further argues that in cases where detention and physical punishment are inflicted by a custodial parent for disciplinary reasons, "the courts are going to be hard pressed to determine when discipline is exceeded." In many cases that may be

---

[2] A provision which exempted parents from child abduction statutes was contained in the Code of 1877-78 and continued as an exemption until 1960 when it was deleted from the abduction statute. *See* Code of 1877-78, § 3713; Code of 1919, § 4409; and Code of 1950, as amended in 1960, § 18.1-36.

[3] In a related case a panel of this Court has reviewed a similar issue. *See Diehl v. Commonwealth*, 9 Va. App. 28, 384 S.E.2d 801 (1989).

true; this is not one of them. It is settled in Virginia that while a parent has the right to discipline his or her child the punishment must be within the bounds of moderation. If the parent exceeds due moderation, he or she becomes criminally liable. *Carpenter v. Commonwealth*, 186 Va. 851, 861, 44 S.E.2d 419, 424 (1947).

The issue of whether punishment exceeds the bounds of moderation is a question for the trier of the facts who may determine the issue from the injuries inflicted. *Id.* In the case before us, the jury's verdict on that matter, approved by the judgment of the trial court, must be affirmed if the record contains sufficient evidence to support it.

We have reviewed the authorities cited by appellant in support of his argument. None of the cases cited involved acts of detention and repeated batteries that resulted in the death of the child-victim. Our conclusion that the evidence supports the verdicts under the circumstances of this case does nothing to undermine the principle that a parent may discipline a child without fear of criminal charges so long as the discipline does not exceed the bounds of moderation. Without hesitation, however, we agree with the jury's conclusion that shackling an unclothed child to the floor of a bus for several weeks, during which time the child is required to drink his own urine, eat his own feces and is subjected to body and head blows which cause his death, exceeded the bounds of moderation; thus, we conclude that the evidence was sufficient to sustain the abduction and felony murder charges. *See State v. Carmichael*, 240 Kan. 149, 727 P.2d 918 (1986).

II.

Appellant next argues that Exhibit 5, a photograph of the victim's buttocks disclosing the extent of the injury inflicted on him, should have been excluded because it was not substantially necessary or instructive to show material facts. Whether a photograph is admissible is largely within the sound discretion of the trial court. *Timmons v. Commonwealth*, 204 Va. 205, 214, 129 S.E.2d 697, 703 (1963). Dr. J. D. Dillon, who examined the victim on the day he was admitted to the hospital, identified Exhibit 5 as depicting accurately the condition of the victim when he first examined him and before bandages had been applied. Sharon Byrne, an attending nurse at the time of the admission, testified

that the picture did not represent what she observed when the victim was placed in the hospital's Intensive Care Unit.

A primary defense at trial was that the parents were merely disciplining a child for his misconduct. As identified by Dr. Dillon, the picture was relevant to the issue of whether the punishment inflicted exceeded the bounds of moderation so as to subject appellant to criminal liability. *Carpenter*, 186 Va. at 861, 44 S.E.2d at 424. We find no abuse of discretion in the admission of Exhibit 5.

## III.

■ Appellant next asserts that one of the grand jurors who returned the indictments against him was shown to have decided before she heard any evidence that appellant "was guilty of something," and, therefore, the trial court constitutionally erred "by not dismissing the indictments returned against appellant." We disagree. A similar issue was considered by the United States Supreme Court in *United States v. Mechanik*, 475 U.S. 66 (1986), where the Court stated:

[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. . . . [and] any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

*Id.* at 70.

Appellant cites United States Supreme Court cases which appear to be contrary to *Mechanik*. The cases cited all involved claims of racial bias on the part of one or more grand jurors. In *Mechanik*, the Court noted that those cases were "directly applicable to the special problem of racial discrimination" and that "no . . . precedent requires the setting aside of a conviction based on a rule violation in the antecedent grand jury proceedings, and the societal interest in deterring this sort of error does not rise to the level of the interest in deterring racial discrimination." *Id.* at 70 n.1. We note, in addition, that the record is bare of any showing that the grand juror's pre-conceived belief that appellant was "guilty of something," in any way prejudiced appellant's petit jury

trial.

## IV.

Appellant frames the fourth issue as being whether cameras may be allowed in a courtroom pursuant to Code § 19.2-266 "where there is good cause that they should be excluded." Code § 19.2-266 authorizes the presiding judge to prohibit electronic media and still photography coverage "for good cause shown." We have examined the record of this appeal and find that it fails to demonstrate "good cause." In support of this issue the only evidence presented by appellant was the testimony of one experienced trial attorney who opined that permitting cameras in court to document the proceedings "may" have an adverse effect upon the interest of a defendant. He offered no proof to support his opinion.[4]

## V.

Appellant next submits the question of whether Code § 19.2-266, on its face and as applied, violates the equal protection clause of the United States Constitution. We find that it does not.

The use of cameras in the courtroom pursuant to an experimental program has been approved by the United States Supreme Court. *Chandler v. Florida*, 449 U.S. 560 (1981). The issue determined by *Chandler* was whether Canon 3:A(7) of the Code of Judicial Conduct of Florida was consistent with "constitutional guarantees." By pretrial motion, Chandler "sought to have *experimental* Canon 3:A(7) declared unconstitutional on its face and as applied." *Id.* at 567. The Canon at issue provided:

Subject at all times to the authority of the presiding judge to (i) control conduct of proceedings before the court, (ii) ensure decorum and prevent distractions, and (iii) ensure the fair administration of justice in the pending cause, electronic media and still photography coverage of public judicial proceedings in the appellate and trial courts of this state shall be allowed in accordance with standards of conduct and technology promulgated by the Supreme Court of Florida.

---

[4] We note that some states today are using video tapes in lieu of or in conjunction with other means to transcribe the trial record for appellate purpose.

*Id.* at 566. Guidelines for the exercise of discretion were provided to the Florida trial courts and the trial courts were authorized to exclude cameras when appropriate. Canon 3:A(7), adopted by the Florida Supreme Court and declared constitutional in *Chandler*, is sufficiently similar to Code § 19.2-266 and Rule 1:14 to persuade us that neither the statute nor the rule violates the equal protection clause of the Constitution of the United States. Moreover, in the case before us, as in *Chandler*, the appellant cites no incident where the use of cameras to record and telecast parts of his trial hampered the presentation of his case, deprived him of an impartial jury, or in any way impaired the fairness of the trial. *See Diehl v. Commonwealth*, 9 Va. App. 28, 384 S.E.2d 801 (1989).

We further observe that by adopting Rule 1:14 pursuant to enabling legislation, Code § 19.2-266, the Supreme Court of Virginia implicitly determined that television coverage in selected courts on an experimental basis violates no state or federal constitutional provision.

For the reasons stated, the judgments of the trial court are affirmed.

*Affirmed.*

Barrow, J., and Cole, J., concurred.