COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Benton and Elder
Argued at Richmond, Virginia


NED JACOB GOODWIN
                                              OPINION BY
v.   Record No. 1701-95-2          JUDGE JAMES W. BENTON, JR.
                                          NOVEMBER 19, 1996
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF FLUVANNA COUNTY
                   John R. Cullen, Judge

          Norman Lamson for appellant.

          H. Elizabeth Shaffer, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     Ned Jacob Goodwin was convicted of assault and battery of

his former spouse in violation of Code § 18.2-57.2.  On appeal,

Goodwin contends that (1) Code § 16.1-278.14 barred the trial

judge from sentencing him in a criminal proceeding after entering

a protective order based on the same conduct; (2) the Double

Jeopardy Clause barred the trial judge from sentencing him in a

criminal proceeding after having entered a protective order based

on the same conduct; and (3) the evidence was insufficient to

support the conviction.  For the reasons that follow, we affirm

the conviction.

                              I.

     On June 15, 1994, Goodwin encountered his former spouse,

Linda Samuel, outside the Fluvanna County courthouse.  They were

going to a hearing on a contempt petition filed by Goodwin

against Samuel in a custody dispute.  Goodwin approached Samuel,

asked her to speak with him, and handed her a business card belonging to a detective employed in the vice and narcotics section of the Chesterfield County Police Department. Samuel read the card, did not understand why Goodwin had given the card to her, and returned it to him. As she continued up the steps, Goodwin told her that "this is not petty . . . and . . . I'll probably go to jail for this."

Samuel testified that Goodwin had been hospitalized several years earlier because of a bipolar disorder that caused him to develop acute paranoia. She had detected a recurrence of abnormal behavior when she took the child to visit with Goodwin and Goodwin told her that his truck was bugged. Because Samuel thought the information on the card might be pertinent to her child's safety, she asked Goodwin if she could have the card. Goodwin again handed her the card. After Samuel reread the card, she continued walking toward the courthouse and began to place the card into her purse.

Goodwin became angry and lunged at Samuel. He pushed Samuel into a rail, twisted her arm, and demanded that she return the card. Samuel testified that Goodwin was "growling" and making other unusual sounds. She became frightened and repeatedly asked Goodwin to let her go. A state trooper heard Samuel call for help and ordered Goodwin to release Samuel.

Goodwin did not deny that an altercation occurred. He testified, however, that he tried to explain to Samuel that he

was having "problems . . . in another area" and that he wanted to tell her not to interfere. He said that the problem occurred because she snatched the card after she had returned it to him. When she turned to run, he struggled with her to retrieve the card.

After the altercation, Samuel filed a criminal complaint for assault and battery and a petition for a protective order. A judge of the juvenile and domestic relations district court heard evidence on both matters. The judge found Goodwin guilty of assault and battery and continued the sentencing until after a psychiatric evaluation could be performed. In addition, the judge granted Samuel's petition for a protective order and prohibited Goodwin from having contact with Samuel for a period of one year. At the sentencing hearing on the assault and battery conviction, the judge imposed a sentence of thirty days in jail, all of which was suspended. Goodwin appealed the conviction.

Following a de novo hearing in the circuit court, the trial judge found Goodwin guilty of assault and battery and imposed a sentence of ten days in jail and a fine of $300. The trial judge suspended the entire jail sentence and suspended $200 of the fine.

II.

Goodwin argues that Code § 16.1-278.14 precluded the trial judge from sentencing him in the criminal matter after a judge

had issued a protective order based on the same act of assault and battery.  Goodwin misconstrues the meaning of Code § 16.1-278.14.

The judge's authority to issue the protective order derived from Code §§ 16.1-278.14 and 16.1-279.1.  The former states:

> In cases involving . . . offenses committed by one spouse against another, the juvenile court or the circuit court may impose a penalty prescribed by applicable sections of the Code.  However, in cases involving offenses committed by one family or household member against another, the court may impose conditions and limitations upon the abusing party . . . including, but not limited to, an order of protection as provided in § 16.1-279.1 . . . .

Code § 16.1-278.14.  The first sentence of Code § 16.1-278.14 does not apply to this case because Goodwin did not assault a spouse; he assaulted his former spouse.  The second sentence does apply, however, because Code § 16.1-228 states that a family or household member includes "the person's former spouse, whether or not he or she resides in the same home with the person."

> In pertinent part, Code § 16.1-279.1 states as follows:
> A.  In cases of family abuse, the court may issue an order of protection to protect the health and safety of the petitioner and to effect the rehabilitation of the abusing person and reconciliation of the parties as the court deems appropriate.  An order of protection issued under this section may include any one or more of the following conditions to be imposed on the abusing person:
>
> > 1. Prohibition of further acts of family abuse;
> >
> > 2. Prohibition of such contacts between

the parties as the court deems appropriate;

3. Granting the petitioner possession of the residence occupied by the parties to the exclusion of the abusing person; however, no such grant of possession shall affect title to any real or personal property;

4. Requiring that the abusing person provide suitable alternative housing for the petitioner, and, if appropriate, any other family or household member;

5. Ordering the petitioner, with his or her consent, or the abusing person to participate in treatment, counseling or other programs designed for the rehabilitation and reconciliation of the parties; and

6. Any other relief necessary for the protection of the petitioner and minor children.

Based on the finding that Goodwin committed an act of abuse against a family member, Code §§ 16.1-278.14 and 16.1-279.1 authorized the judge to issue an order to protect Samuel.

Code § 18.2-57.2(A) states that "[a]ny person who commits an assault and battery against a family or household member shall be guilty of a Class 1 misdemeanor." Code § 18.2-57.2(C) defines family or household member to include "the defendant's former spouse, whether or not he or she resides in the same home with the defendant." Thus, Code § 18.2-57.2 clearly authorized the prosecution of Goodwin for the assault and battery of Samuel.

Nothing in Code § 16.1-278.14 prevented the judge from convicting Goodwin under Code § 18.2-57.2 after issuing a

protective order under Code § 16.1-279.1.  "The plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction . . . ."  Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992). The plain meaning of these provisions of the Code is that both options are available to the judge when a spouse commits an act of assault or battery against a former spouse.  Goodwin's interpretation of Code § 16.1-278.14 would force a judge to choose between punishing past misconduct and preventing future harm.  Had the General Assembly intended to impose such a limitation, it would have stated its intention expressly.  We hold that by separately setting forth two options, the General Assembly intended to authorize judges both to impose criminal sanctions punishing past misconduct and to issue orders protecting family members from future harm.

III.

Goodwin next argues that under the Double Jeopardy Clause, the judge's issuance of a protective order barred a prosecution against him in the criminal matter based on the same conduct. Goodwin asserts that he was wrongfully subjected to multiple "punishments" for the same offense.  We disagree.

One of the protections afforded by the Double Jeopardy Clause is the prohibition "against multiple punishments for the same offense."  North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnote omitted).  "The double jeopardy clause becomes

- 6 -

operative if one of the sanctions 'may not fairly be characterized as remedial' . . . . A sanction is not 'remedial' if it 'bears no rational relation' to [a remedial goal] . . . ." Small v. Commonwealth, 12 Va. App. 314, 317, 398 S.E.2d 98, 100 (1991) (en banc) (quoting United States v. Halper, 490 U.S. 435, 449 (1989)). "[T]he determination whether a given . . . sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." Halper, 490 U.S. at 448.

In this case, the Double Jeopardy Clause is not operative because the protective order is remedial. Code § 16.1-279.1 states that "[i]n cases of family abuse, the court may issue an order of protection to protect the health and safety of the petitioner and to effect the rehabilitation of the abusing person and reconciliation of the parties." The protective order issued in this case serves the remedial goals of (1) protecting Samuel from future abuse by prohibiting future contact between her and Goodwin; (2) rehabilitating Goodwin by prohibiting him from placing himself in a situation that could lead to abuse; and (3) effecting a reconciliation of the parties by preventing further conflict between them. These goals are not punitive.

In addition, the terms of the order are rationally related to the advancement of the remedial goals. The order prohibited Goodwin from having contact with his former spouse for a period

of one year.  The limited duration of the order supports an inference that the purpose was not to punish, but rather, to prevent abuse during a time when abuse was likely to occur. Moreover, the Code states that "[e]ither party may at any time file a written motion with the court requesting a hearing to dissolve or modify the order."  Code § 16.1-279.1(B).  The ability to modify or dissolve the order adds to its remedial nature because it allows the judge to ensure that the order remains rationally related to its remedial goals.

For these reasons, we hold that the protective order issued pursuant to Code § 16.1-279.1 is remedial and did not constitute punishment for double jeopardy purposes.  Therefore, the sentence imposed in the criminal proceeding did not violate the Double Jeopardy Clause.

IV.

Goodwin also argues that the evidence was insufficient to support a conviction of assault and battery.  He contends that he was privileged to use force to recover his property.  We hold that the evidence supported the judge's finding that Goodwin used excessive force.

When one is privileged to use force, the amount of force used must be reasonable in relation to the harm threatened.  See Diffendal v. Commonwealth, 8 Va. App. 417, 421, 382 S.E.2d 24, 26 (1989).  The reasonableness of the force used is a factual issue.  See id. at 422, 382 S.E.2d at 26; Foster v. Commonwealth, 13 Va.

App. 380, 384, 412 S.E.2d 198, 201 (1991).  In considering the sufficiency of the evidence, we apply the usual standards.  "On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

The evidence proved that Goodwin pushed Samuel against a rail, twisted her arm, and demanded that Samuel return the business card.  Although Goodwin partially disputed the testimony regarding his actions, the trial judge found that Samuel's testimony was more credible than Goodwin's testimony.  "The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide."  Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986).

Samuel's testimony proved that Goodwin used excessive force.  Upon that evidence, the trial judge ruled that Goodwin's defense of privilege was not viable under the facts of this case.  The Commonwealth's evidence was sufficient to prove Goodwin's guilt beyond a reasonable doubt.  Accordingly, we affirm the conviction.

Affirmed.