Wednesday      6th

January, 1999.


Tomika T. Taylor, Sometimes Known as
 Tamika T. Taylor,                                          Appellant,

 against      Record No. 2322-97-2
              Circuit Court No. 97-6564

Commonwealth of Virginia,                                   Appellee.


Upon a Petition for Rehearing En Banc

Before the Full Court


On December 8, 1998 came the appellee, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on November 24, 1998, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on November 24, 1998 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellee shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Bray
Argued at Richmond, Virginia


TOMIKA T. TAYLOR, SOMETIMES KNOWN AS
 TAMIKA T. TAYLOR
                                        OPINION BY
v.        Record No. 2322-97-2     JUDGE LARRY G. ELDER
                                      NOVEMBER 24, 1998
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF GREENSVILLE COUNTY
                 Robert G. O'Hara, Jr., Judge

         Jerry E. Waldrop (Waldrop Law Office, on
         brief), for appellant.

         Donald E. Jeffrey, III, Assistant Attorney
         General (Mark L. Earley, Attorney General, on
         brief), for appellee.


    Tamika Taylor (appellant) appeals her conviction for

abduction in violation of Code § 18.2-47.  She contends the

evidence was legally insufficient to support her conviction

because the person she aided in committing the abduction was the

natural father of the child abducted, giving him legal

justification for taking the child.  The Commonwealth contends

appellant failed properly to preserve this argument for appeal.

For the reasons that follow, we hold that appellant's assignment

of error was properly preserved, and we reverse the abduction

conviction.[1]

---

    [1]Appellant also contends the evidence was factually
insufficient to support her conviction because the testimony of
the Commonwealth's witnesses was inconsistent and incredible.
Because we reverse on the legal sufficiency issue, we do not reach
the factual sufficiency issue.

I.

FACTS

At about 1:00 a.m. on December 26, 1996, appellant and her fiance, Avery Moore, arrived at the home of Meshia Powell, ostensibly to see Tasean, the ten-month-old son of Powell and Moore. Powell and Moore had never been married and had not lived together. Powell had cared for the child since his birth. Moore was not present for the birth, had seen the child only once, and had never paid child support. No custody order was then pending or in effect.

Prior to going to Powell's home that morning, Moore and appellant went to the home of Powell's aunt. Moore told Powell's aunt "he had come to take the baby" and wanted to telephone Powell. Appellant told Moore to tell Powell that Moore's mother was with them and wanted to see the child. Powell's aunt did not see Moore's mother.

Moore telephoned Powell and told her he and his mother wanted to see the child and that he had gifts for the child; he did not tell Powell he intended to take the child. Powell gave Moore her address so they could come to see the child. When Moore and appellant departed, Powell's aunt called Powell's stepmother and told her Moore said he intended to take the child.

When Moore and appellant arrived at Powell's home, Powell's father opened the door. Moore and appellant "kind of pushed [him] away from the door and came in and asked for [Powell]." As

Powell's father called her, Moore kept saying he wanted to see the child and hold him. Powell came downstairs with the child but refused to let Moore hold him and began to go back upstairs. Appellant came up behind Powell on the stairs, began to argue with her about Moore's holding the child, and pushed Powell. The child fell from Powell's arms, and appellant and Powell started fighting. Appellant picked up the child and passed him to Moore. Powell tried to come back down the stairs, but "[appellant] was blocking the steps so [Powell] couldn't get by." Powell's father somehow got the child, and he and Moore struggled for the child. During the struggle, Moore called another male in the car to hold the door open. Appellant jumped in the car, started it, and kept calling to Moore. When Powell's father let go of the baby, allowing Moore to hold him in order to prevent the baby from being hurt, appellant said "hurry up" and "get in the car." Moore got into the car with the child, and appellant drove off.

Powell got the license number of their vehicle and reported the incident to police. North Carolina police stopped appellant and Moore but, about an hour later, allowed them to continue on to their home in Georgia.

On January 2, 1997, police arrested appellant and Moore in Decatur, Georgia, and retrieved the child. After being Mirandized, appellant made a brief written statement. In it, she denied handing Moore the child, said she fought Powell in self-defense, and denied driving the car from the scene. At

-4-

trial, she contended that she and Moore had no advance plans to take the baby, that she hit Powell in self-defense, that she did not help Moore take the child and that she continuously encouraged him to return the child. In contrast to her written statement, she admitted driving the car from the scene, but she insisted she drove only to the next house because she did not have a valid driver's license. She admitted she knew Moore had the child in the car when she drove off and that she made no effort to call Powell from Georgia.

Appellant moved to strike the abduction charge at the close of the Commonwealth's evidence. She contended that Moore had a legal right to take the child because no custody order was in effect and that, because Moore was not guilty of abduction, she could not be guilty as a principal in the second degree. The court denied the motion. In closing, appellant argued (1) that the Commonwealth's evidence was inconsistent, not credible, and failed to prove she participated in the taking of the child, and (2) that even if the evidence was credible, she could not be convicted because Moore could not be found guilty of abducting his own child when no custody order was in effect. The trial court rejected these arguments and convicted her of abduction. The court also convicted her of assault and battery, but she challenges only the abduction conviction on appeal.

## II.

### PROCEDURAL BAR

The Commonwealth contends that Rule 5A:20 bars appellant's challenge to the sufficiency of the evidence on appeal.  Under that rule, it contends, appellant had a duty to give a "clear and exact reference" to the pages of the record on which she preserved each issue for appeal.  See Rule 5A:20(d).  Appellant cited the pages of the transcript on which she made a motion to strike at the close of the Commonwealth's evidence, but, reasons the Commonwealth, she waived the right to rely on that motion by presenting evidence of her own, and she did not cite any additional portion of the record to show that she again brought the sufficiency issues to the attention of the trial court following completion of her evidence, as necessary to preserve the issue for appeal.

We disagree with the Commonwealth's argument.  A defendant who moves to strike the Commonwealth's evidence, presents evidence of her own, and fails to renew her motion to strike at the completion of her case nevertheless may renew her objection to the sufficiency of the evidence in other ways, such as in closing argument to the court.  See, e.g., Campbell v. Commonwealth, 12 Va. App. 476, 478-81, 405 S.E.2d 1, 1-3 (1991) (en banc).  Appellant's closing argument in this case was sufficient under the contemporaneous objection rule to preserve the issues she raises on appeal.  See, e.g., id.; Rule 5A:18. Her mere failure to specify the pages of the transcript on which her closing argument appears is not a bar to her appeal.  The

provisions of Rule 5A:20 are not jurisdictional.

III.

SUFFICIENCY OF THE EVIDENCE

Appellant contends the evidence was legally insufficient to support her abduction conviction.  Appellant argues that the absence of a custody order gave Moore, as a natural parent, the "legal justification" necessary to take the child without violating Code § 18.2-47 and that, because Moore's actions did not constitute abduction, appellant could not be convicted for being a principal in the second degree.  We agree.

> Under Code § 18.2-47(A),
> [a]ny person, who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes the person of another, with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of "abduction" . . . . Abduction for which no punishment is otherwise prescribed shall be punished as a Class 5 felony.

One who is "present, aiding and abetting, and intend[s] his or her words, gestures, signals, or actions to in some way encourage, advise, urge, or in some way help the person committing the crime to commit it" is a principal in the second degree.  McGill v. Commonwealth, 24 Va. App. 728, 733, 485 S.E.2d 173, 175 (1997).

"[Code § 18.2-47] provides that any person, except a law enforcement officer in the performance of his duty, may be prosecuted for violation of its provisions."  Diehl v.

-8-

Commonwealth, 9 Va. App. 191, 194, 385 S.E.2d 228, 230 (1989).

However, the key portion of the statute in this case remains the "without legal justification" prong, for "any person" may violate the statute only if he or she acts "without legal justification." Code § 18.2-47(A). We held in Diehl v. Commonwealth, 9 Va. App. 191, 385 S.E.2d 228, that a parent may be convicted for abduction under this code section when he or she acts with the first intent enumerated in the statute--"the intent to deprive [the abductee] of his personal liberty." Diehl involved parents who jointly abducted their adoptive teen-aged son, by shackling and paddling him, ostensibly as a means of discipline. Id. at 193-95, 385 S.E.2d at 229-31. Diehl did not involve a dispute between parents for exclusive custody and, therefore, did not address the second intent enumerated in the statute--"intent . . . to withhold or conceal [the abductee] from any person, authority or institution lawfully entitled to his charge."

Whether a natural parent is legally justified, under Code § 18.2-47(A), in taking custody of his or her child to the exclusion of the other natural parent in the absence of an order determining custody is a question of first impression in Virginia. Other states considering the issue have held that "each parent has an equal right to custody of a child in the absence of a court order" and that "a parent does not commit the crime of kidnapping by taking exclusive possession of the child where no such order exists." See State v. Stocksdale, 350 A.2d

-9-

539, 541 (N.J. Super. Ct. Law Div. 1975); see also William B.
Johnson, Annotation, Kidnapping or Related Offense by Taking or
Removing of Child by or Under Authority of Parent or One In Loco
Parentis, 20 A.L.R.4th 823 § 3 (1983 & Supp. 1997).  But see
State v. Donahue, 680 P.2d 191, 193 (Ariz. Ct. App. 1984) (under
custodial interference statute including "legal justification"
prong, holding that father's right was "at most a right . . .
co-equal . . . with the child's natural mother" and that "[h]e
did not have the right to custody of the child to the exclusion
of the natural mother" without "a court order to that effect");
State v. Butt, 656 A.2d 1225, 1226-27 (Me. 1995) (under statute
proscribing criminal restraint by a parent, which contained
"legal justification" prong, holding that right to custody was
joint and that jury could find father violated statute by
exercising exclusive custody).  Construing this principle in
conjunction with Code § 18.2-47, we conclude that the natural
parent of a child does not act "without legal justification"
under the statute when he or she "seizes, takes, transports,
detains or secretes" the child "with the intent [only] . . . to
conceal him from [the child's other natural parent] . . .
lawfully entitled to his charge."  Code § 18.2-47.

To hold that a child's natural parent acts "without legal
justification" under Code § 18.2-47(A) in such circumstances
would contravene legislative intent.  A fundamental rule of
statutory construction provides "that a statute must be construed

from its four corners and not by singling out particular words or phrases." Smith v. Commonwealth, 8 Va. App. 109, 113, 379 S.E.2d 374, 376 (1989). "If the several provisions of a statute suggest a potential for conflict or inconsistency, we construe those provisions so as to reconcile them and to give full effect to the expressed legislative intent." Mejia v. Commonwealth, 23 Va. App. 173, 176-77, 474 S.E.2d 866, 868 (1996) (en banc). "[A] statute should never be construed so that it leads to absurd results. In addition, penal statutes must be strictly construed against the Commonwealth and applied only in those cases clearly falling within the language of the statute." Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992) (citations omitted).

Code § 18.2-47(A) provides that "[a]bduction for which no punishment is otherwise proscribed shall be punished as a Class 5 felony." Subsection (B) provides that
> [i]f such offense is committed by the parent
> of the person abducted and punishable as a
> contempt of court in any proceeding then
> pending, [it] shall be a Class 1 misdemeanor
> in addition to being punishable as a contempt
> of court. Provided further, however, that
> [if] . . . the person abducted is removed
> from the Commonwealth by the abducting
> parent, [it] shall be a Class 6 felony in
> addition to being punishable as a contempt of
> court.

To construe Code § 18.2-47(A) in the manner the Commonwealth urges would result in illogically disproportionate treatment of offenders. A parent taking his or her natural child with intent

"to withhold or conceal" the child from the other natural parent at a time when no custody proceeding was pending would be guilty of a Class 5 felony under subsection (A). However, if a parent committed the same act while a custody proceeding was pending, he or she would be guilty of a lesser offense, a Class 1 misdemeanor or a Class 6 felony, depending on the circumstances. To conclude that the legislature intended to punish parental abduction during the pendency of a custody proceeding as a lesser crime than the same act committed when no custody proceeding had been initiated defies logic.

Therefore, we construe Code § 18.2-47 to provide that, if no custody proceedings are pending, the natural parent of a child may not be convicted for abducting the child "with the intent . . . to withhold or conceal him from any person . . . lawfully entitled to his charge"; if no custody proceedings are then pending, the natural parent acts with "legal justification" as that term is used in Code § 18.2-47(A). Therefore, Moore's actions in taking the child did not constitute abduction.[2] The

_____

[2]The holdings in Bausell v. Commonwealth, 165 Va. 693, 181 S.E. 462 (1935), and its companion case do not require a different result. See Bausell v. Commonwealth, 165 Va. 669, 181 S.E. 453 (1935). Those cases involved a father's use of extreme physical force to regain custody of his three-year-old daughter from the child's mother, resulting in death to the mother and her relative and injury to the father and his relative. See 165 Va. at 674, 181 S.E. at 454. In trying father's relative for murder, the court instructed the jury that father and his relative "did not have the right to break into [mother's] bedroom . . . to secure possession of [the child]." 165 Va. at 695, 181 S.E. at 463. On appeal of the murder conviction of father's relative, the Supreme Court agreed, holding:

Commonwealth nevertheless contends that appellant was properly convicted of abduction as a principal in the second degree even if Moore's parental status prevented him from being convicted for abducting the child. We disagree and hold that the trial court erred in convicting appellant of abduction.

---

> The father's right to the possession of his three-year-old daughter, as against the right of the mother, is a qualified right to be decided by the court in a proper proceeding. This qualified right does not entitle the father to regain the custody of his child [with force and arms], so long as the child is in the possession of the mother, and is in no serious danger.

Id.
The holding in Bausell made no reference to the crime of abduction, and the above-quoted language stands for nothing more than the general proposition that one cannot use unreasonable force to regain that to which he has a lawful right. See, e.g., Goodwin v. Commonwealth, 23 Va. App. 475, 483-84, 477 S.E.2d 781, 785 (1996). Although entitled to possession or custody, one may still be punished for using unreasonable force to regain that possession or custody. See id. In Bausell, such force resulted in charges for murder. In appellant's case, it resulted in a conviction for assault and battery which appellant does not challenge on appeal. These principles do not support the argument that either Moore or appellant was guilty of abduction in the case at bar.

A split of authority exists regarding whether an agent or other person present with and assisting a parent to gain exclusive custody of a child may be found guilty of kidnapping when the parent himself has committed no illegal act.[3] See Stocksdale, 350 A.2d at 541; Annotation, supra, § 4. The majority view holds that a parent's agent may not be held liable; the minority view holds that, because only the parent has a right to custody, parental immunity does not shield one who helps the parent. See Stocksdale, 350 A.2d at 541; Wilborn v. Superior Ct., 337 P.2d 65, 66 (Cal. 1959) (en banc).

We believe the majority view is the better reasoned. As explained in Stocksdale,

> [A]ny person who aids or abets another to commit a crime is punishable as a principal.
> There is no prerequisite to a conviction of an aider and abettor that the principal be tried and convicted. Each participant in an illegal venture is required to "stand on his own two feet." An aider or abettor, for example, may generally be convicted where the principal has a defense personal to himself which exonerates him from criminal responsibility.
> There are, however, exceptions to this general rule of accessorial liability. Accomplice liability, for example, is not

___

[3]We need not decide whether a parent's right to custody of his or her child may be delegated to an agent to exercise either in the presence of the delegating parent or in his absence. See Wilborn v. Superior Ct., 337 P.2d 65, 66 (Cal. 1959) (en banc) (noting that "[i]f a child be taken or enticed away from one parent by the other parent, the mental anxiety of the parent who loses the child would not ordinarily be nearly so great as where the child passes into the hands of one having no parental obligations toward the child"). Under the facts of appellant's case, the child's father rather than appellant carried him from his mother's house.

-14-

> sustained where the defense of one party not only exonerates himself but also changes the character of the act so that it can no longer be viewed as criminal in nature.

350 A.2d at 543-44 (citations omitted).  In a parental abduction case like ours, appellant's liability as a principal in the second degree is wholly derivative of Moore's liability.  The existence of legal justification for Moore's actions does not simply immunize him from criminal liability; rather, it so "changes the character of the act . . . that it can no longer be viewed as criminal in nature."  Id. at 544.  Therefore, appellant's acts in aiding and abetting Moore, like Moore's acts, did not violate Code § 18.2-47.

For the foregoing reasons, we hold (1) that a parent does not commit abduction in violation of Code § 18.2-47(A) when he takes his child from the custody of the child's other natural parent "with the intent [only] to withhold or conceal him from [the other natural parent] lawfully entitled to his charge" as long as no custody order is then pending or in effect, and (2) that one who aids that parent in taking the child also does not commit abduction.  Accordingly, we reverse and dismiss appellant's abduction conviction.

Reversed and dismissed.