COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Chief Judge Decker, Judges Beales and Fulton
Argued by videoconference


JAMES EBERHARDT

v.        Record No. 0028-21-2

COMMONWEALTH OF VIRGINIA

OPINION BY
CHIEF JUDGE MARLA GRAFF DECKER
DECEMBER 14, 2021


FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
Joseph M. Teefey, Jr., Judge

George F. Marable, III, for appellant.

Susan Wosk, Assistant Attorney General (Mark R. Herring, Attorney
General; Rachel L. Yates, Assistant Attorney General, on brief), for
appellee.


James Eberhardt appeals his conviction of child cruelty in violation of Code

§ 40.1-103(A).  On appeal, he argues that the evidence was insufficient to support his conviction.

He contends that the Commonwealth failed to prove that his behavior violated the statute or that

he acted with the requisite intent because his only purpose was to discipline his child.  For the

following reasons, this Court affirms the appellant's conviction.

I.  BACKGROUND[1]

The appellant and Tiffany Camp, the parents of nine-year-old B.E., were tried jointly in a

bench trial for injuries that the child sustained on or about December 4, 2019.  On December 5,

2019, B.E. told the school nurse, Caren Edwards, that her right arm hurt.  Edwards examined the

girl's arm and saw "significant bruising."  She also saw "tons of bruising" on B.E.'s legs,

---

[1] Under familiar principles of appellate review, the facts are recited in "the light most
favorable to the Commonwealth, as the prevailing party at trial."  Coomer v. Commonwealth, 67
Va. App. 537, 544 (2017) (quoting Allen v. Commonwealth, 287 Va. 68, 72 (2014)).

buttocks, and right hip. Edwards notified the school resource officer, Sergeant Dooley of the Dinwiddie County Sheriff's Office, and showed him B.E.'s bruises.

Donna Harrison, an employee of the Dinwiddie County Department of Social Services, spoke with B.E. that same day. Harrison noted that the child's injuries included redness and bruising from a single mark on her upper right arm, five to eight "linear marks" on her right arm, and "at least that many" linear marks on the backs of her legs and buttocks. Harrison took photographs of B.E.'s injuries.[2]

B.E. testified that when she came home from school on December 4, 2019, the appellant was angry because her teacher had reported to him that B.E. had been "talking again" in school. B.E. said that the appellant "got mad," pushed her to the floor, and told her to go to her room and remove her clothes. Then her mother, Tiffany Camp, punched her three times on her upper right arm, and when the appellant told Camp "to move out [of] the way," Camp left the room. The appellant said to B.E., "I told you to stop talking in class," and started hitting her with the webbed "belt" portion of a dog leash. B.E. said that it hurt and she screamed and cried.

According to B.E., the appellant had spoken with her on at least two prior occasions about not disrupting her class by talking. As punishment, he had taken away her phone and videogame privileges. B.E. generally agreed that the appellant punished her by "spank[ing]" after he had talked to her about an issue "a certain number of times." B.E. also testified that she had "basically been hit [her] whole life" but had "never told anybody."

Investigator Crowder, also with the Dinwiddie County Sheriff's Office, was among the several officials who spoke with B.E. at school on December 5, 2019. Although he did not conduct a comprehensive examination of the child for injuries, he noticed that she had redness on her face. Additionally, when B.E. showed him where her right arm hurt, he saw welts, bruising,

---

[2] The photographs were admitted into evidence at trial.

swelling, and redness in that location. Crowder interviewed Camp at B.E.'s school that day. Camp admitted she was aware that the appellant had hit B.E. the night before but claimed that she had not been involved.

Crowder later spoke with the appellant at the family's home. The appellant was "very cooperative" and admitted "whip[ping]" B.E. He said he did so because she had continued to talk in school despite his other attempts to discipline her to stop the behavior. The appellant noted that "in the bible Jesus stated[, ']spare the rod[,] spoil the child.[']" He indicated his belief that this statement was "true" and said that he intended "to continue to discipline his child the same way."

The appellant testified at trial that he was the "primary disciplinarian" in his home. He asserted that he used "spanking" only as a "last resort" when B.E. continued to misbehave. He denied pushing B.E. to the floor but admitted that he "grabbed" her, held her arm, and "spanked" her ten times with the dog leash. He said that he himself had been "beat[en] with switches and belts" as a child and that he used the webbed-belt portion of the dog leash on B.E. because he "didn't want to hurt her." The appellant suggested that he intended to hit only B.E.'s buttocks but struck her arms and legs, as well, because she was moving to avoid the blows. He admitted that B.E. yelled while he was striking her but claimed that she cried only "a little bit."

The appellant contested the sufficiency of the evidence to prove the charged offense in his motions to strike and closing argument. He suggested that his behavior did not amount to beating within the meaning of the statute. The appellant further contended that the Commonwealth had to prove that he acted with at least criminal negligence and not merely with the intent to impose an appropriate corporal punishment.

The trial court accepted a portion of the appellant's testimony, finding that he used a "webbed dog leash" to strike B.E. ten times. It noted that although the appellant's "intended

target was . . . [the] soft tissue of [her] buttocks," the child was moving, and the evidence also showed marks on her arm and legs. The judge further found that "the blows . . . were strong enough to have raised whelps [*sic*] on the flesh of the victim," as shown in the photographs, and also caused bruising. He relied on a dictionary definition of "beat" as meaning "repeatedly striking so as to harm or hurt." In holding that the evidence satisfied that definition, the judge observed that the appellant's behavior was "clearly beyond anything that would be considered to be reasonable based on the number of blows," the force used to inflict them, "the use of an implement" to do so, and the "ultimate injury that was sustained," particularly in light of the appellant's "testi[mony] that it was his intent to do that." Finally, the judge noted that the fact that the appellant could hear the child "crying out . . . during each of these lashes" made clear that he knew while he "continued to beat" her that he was "causing [her] hurt and pain."

The court convicted the appellant of child cruelty based on the beating and sentenced him to five years in prison with three years seven months suspended.[3]

## II. ANALYSIS

The appellant argues that the evidence was insufficient to support his conviction of child cruelty in violation of Code § 40.1-103(A). In addressing this claim, we examine the evidence in the record in light of both well-established standards of review and additional, more nuanced legal principles.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" Smith v. Commonwealth, 296 Va. 450, 460 (2018) (quoting Commonwealth v.

---

[3] The trial court dismissed a related charge of misdemeanor assault and battery of a family member in violation of Code § 18.2-57.2. Conversely, the court found Camp, the appellant's co-defendant, guilty of assault and battery of a family member but acquitted her of the more serious charge of violating Code § 40.1-103.

<u>Perkins</u>, 295 Va. 323, 327 (2018)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" <u>Chavez v. Commonwealth</u>, 69 Va. App. 149, 161 (2018) (quoting <u>Banks v. Commonwealth</u>, 67 Va. App. 273, 288 (2017)). This deference is owed to both the trial court's assessment of the credibility of the witnesses and the inferences to be drawn "from basic facts to ultimate facts." <u>See</u> <u>Davis v. Commonwealth</u>, 65 Va. App. 485, 500 (2015) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)). In the end, the appellate court "ask[s] whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>Id.</u> (quoting <u>Crowder v. Commonwealth</u>, 41 Va. App. 658, 663 (2003)).

To the extent that statutory interpretation is necessary to resolve a particular sufficiency issue, this Court reviews that aspect *de novo*. <u>See</u> <u>Green v. Commonwealth</u>, 72 Va. App. 193, 202 (2020). Criminal statutes must be "strictly construed against the Commonwealth." <u>Id.</u> Nonetheless, the court interpreting the statute must determine legislative intent "from the plain meaning of the language used." <u>Hillman v. Commonwealth</u>, 68 Va. App. 585, 592-93 (2018) (quoting <u>Meeks v. Commonwealth</u>, 274 Va. 798, 802 (2007)). An undefined term in a statute may be defined using its standard dictionary definition. <u>See</u> <u>Jones v. Commonwealth</u>, 296 Va. 412, 415 (2018); <u>see also</u> <u>Mollenhauer v. Commonwealth</u>, 73 Va. App. 318, 335 (2021) (defining other undefined terms in Code § 40.1-103(A) with reference to dictionary definitions).

The appellant was convicted of violating Code § 40.1-103(A), which provides in pertinent part that it is unlawful for a person with "custody of any child willfully or negligently to cause or permit the life of such child to be endangered or the health of such child to be injured, . . . or to cause or permit such child to be overworked, tortured, tormented, mutilated,

beaten or cruelly treated."[4]  The statute "covers a wide swath of criminal behavior []from mere endangerment to actual torture."  Barnes v. Commonwealth, 47 Va. App. 105, 111 (2005).

The appellant offers two sufficiency arguments.  First, he suggests that he did not engage in any behavior proscribed by the statute.  Second, he contends that the evidence was insufficient to prove that he acted with the requisite intent because he was merely disciplining his child.

Our analysis of these issues is guided by the overarching principle that the common law generally permits a parent to use corporal punishment in disciplining his or her child.  See Carpenter v. Commonwealth, 186 Va. 851, 860-63 (1947); Campbell v. Commonwealth, 12 Va. App. 476, 483 (1991) (*en banc*).  Corporal punishment is lawful if it is within "the bounds of moderation and reason."  Carpenter, 186 Va. at 861.  However, a parent's conduct may be unlawful if the discipline used is "excessive" or "immoderate."  Id. at 862 (quoting Steber v. Norris, 206 N.W. 173, 175 (Wis. 1925)), cited in Campbell, 12 Va. App. at 483.  It is through this lens that the Court examines the sufficiency of the evidence to prove the challenged elements in this case—whether the appellant's actions constituted a beating and whether he acted with the requisite intent.

A.  The Appellant's Actions

The appellant disputes the trial court's conclusion that his actions toward his daughter proved a "beat[ing]" as proscribed by Code § 40.1-103(A).  The term "beat" is not defined in the statute.  The dictionary definition of the term is "to strike . . . [or] hit repeatedly with [a] hand, fist, weapon, or other instrument so as to inflict pain[, ]as in order to punish or warn."  Beat,

---

[4] The statute contains additional language that proscribes "willfully or negligently . . . caus[ing] or permit[ting] such child to be placed in a situation that its life, health or morals may be endangered."  Code § 40.1-103(A).  This part of the statute has been held to be unconstitutionally vague.  See Mollenhauer, 73 Va. App. at 328, 330 (citing Commonwealth v. Carter, 21 Va. App. 150 (1995)).  The trial court did not rely on this portion of the statute in convicting the appellant, and the constitutionality of the remainder of the statute is not at issue in this case.

Webster's Third New International Dictionary of the English Language (1993) [hereinafter Webster's].[5]  The definition acknowledges that blows inflicted for the purpose of punishment nonetheless may constitute beating.  See id.  The Supreme Court of Virginia has recognized that "a parent has the right to administer such reasonable and timely punishment as may be necessary to correct faults in his growing children," as long as "[t]he right [is not] used as a cloak for the exercise of malevolence or the exhibition of uncontrolled passion on the part of the parent." Carpenter, 186 Va. at 860.  A parent "becomes criminally liable" when that parent exceeds "the bounds of moderation and reason" in punishing his or her child.  Id. at 861, quoted in Campbell, 12 Va. App. at 483.[6]

The proscription in Code § 40.1-103(A) against "beat[ing]" one's child therefore must be viewed in light of the principle that a parent may discipline his or her child "within the bounds of moderation and reason."  See id.; see also Townes v. Va. State Bd. of Elections, 299 Va. 34, 49 (2020) ("When 'the General Assembly acts in an area in which one of its appellate courts has already spoken, it is presumed to know the law as the court has stated it and to acquiesce

---

[5] In defining the term "beat" to mean "repeatedly striking so as to harm or hurt," the trial judge used a very similar, albeit shorter, definition from an unspecified "Merrian [*sic*] Webster's" dictionary.  Merriam-Webster, Inc., is the parent company that produces both Webster's Third New International Dictionary of the English Language (the comprehensive dictionary cited in this opinion) and various more "compact" versions published under the Merriam-Webster name (such as Merriam-Webster's Collegiate® Dictionary).  See Merriam-Webster, About Us:  Merriam-Webster's Ongoing Commitment, https://www.merriam-webster.com/about-us/ongoing-commitment (last visited Dec. 9, 2021); id. About Us: Merriam-Webster FAQ, https://www.merriam-webster.com/about-us/faq.  Accordingly, we conclude that the definitions used below and on appeal are substantially the same.

[6] Other jurisdictions impose this same requirement of moderation.  See, e.g., State v. Thorpe, 429 A.2d 785, 788 (R.I. 1981); State v. Singleton, 705 P.2d 825, 827 (Wash. Ct. App. 1985); see also People v. Karen P., 692 N.E.2d 338, 339, 342, 346 (Ill. App. Ct. 1998) (holding that although the court was required to "take care not to create a legal standard from [its] personal notions of how best to discipline a child," a mother's "spanking" of her child with a wooden spoon in accordance with her religious beliefs regarding discipline was not "excessive corporal punishment" proscribed by state law, as her acts caused a small bruise on only one occasion and the child never appeared to be unhappy or in any pain as a result of the spankings).

therein.'" (quoting Weathers v. Commonwealth, 262 Va. 803, 805 (2001))).[7]  It is important to recognize that what constitutes "'moderat[ion]' . . . [and] 'reason[]' as applied to [the punishment of a child is] ever changing according to . . . the period and conditions in which we live." Carpenter, 186 Va. at 863.  Significantly, determining "whether punishment has been moderate or excessive" is for the fact finder to assess based on "the attending circumstances, considering the age, size and conduct of the child, the nature of his [or her] misconduct, the nature of the instrument used for punishment, and the kind of marks or wounds inflicted on the body of the child." Id.

The Supreme Court affirmed the defendant's conviction of assault and battery based on these principles in Carpenter v. Commonwealth.  In that case, the defendant used a "switch" to severely "whip[]" a seven-year-old girl. Id. at 855 (noting that the child was heard "crying and screaming" and had "cut[s] and bruise[s]" on her arms, legs, and face).  The Court concluded that the severity of the defendant's conduct toward the child for "merely filching some candy in the family home" "showed an utter lack of a due appreciation of parental duty" and supported the defendant's conviction. Id. at 866; cf. also Diehl v. Commonwealth, 9 Va. App. 191, 193-95 (1989) (holding that punishing a thirteen-year-old boy by severely beating him on the buttocks and head and shackling him to the floor exceeded the bounds of permissible parental discipline).

_____

[7] The predecessor versions of Code § 40.1-103(A) contained the language "cruelly beaten" and "cruelly treated." See Code § 1816(a) (1942) (repealed); Code § 40-112 (1950) (repealed).  The statute was recodified as Code § 40.1-103 in 1970. See 1970 Va. Acts ch. 321. Amendments in 1991 removed "cruelly" from modifying "beaten" and changed the class of the offense from a misdemeanor to a Class 6 felony. See 1991 Va. Acts ch. 511. See generally Mollenhauer, 73 Va. App. at 335 (discussing the meaning of "cruelly" as used in the statute's term "cruelly treated").  By removing the adverb "cruelly" from the term "cruelly beaten" and increasing the potential punishment, the General Assembly demonstrated an intent to provide greater protection for children.  These amendments are also consistent with Supreme Court case law recognizing that corporal punishment must be administered reasonably and in moderation. See Carpenter, 186 Va. at 861.

Similarly, in this case, the appellant admitted that he punished his nine-year-old daughter for talking in school by striking her ten times with a webbed dog leash, in what he described as "spanking" or "whip[ping]" the child. She "cr[ied] out . . . during each of these lashes," and they left numerous linear marks and welts on the girl's arm, legs, and buttocks, as well as significant bruises, all of which remained visible the next day. Using a dictionary definition of "beat" as meaning "repeatedly striking so as to harm or hurt," the trial court found that appellant's conduct was "clearly beyond anything that would be considered to be reasonable" discipline and, as such, that it fell within the behavior proscribed by the statute. The court considered the number of blows, the force accompanying the blows, the implement used to inflict the blows, the child's verbal responses, and the injuries the child sustained.

The court's conclusion, as fact finder, that the appellant administered a beating as proscribed by Code § 40.1-103(A) was not plainly wrong or unsupported by the evidence. See Carpenter, 186 Va. at 861, 866; Harbaugh v. Commonwealth, 209 Va. 695, 697-98 (1969) (affirming the defendant's conviction for assault and battery of a five-year-old boy, whom he admitted hitting "fairly hard" on the buttocks "ten or twelve times with his open hand" because the boy "missed the school bus").[8]

The appellant argues that the trial court erred by finding him guilty of child cruelty because it found co-defendant Camp guilty of only assault and battery, even though she "punched" B.E. in the arm three times. The appellant asserts that punching and beating are

_____

[8] Courts in other states have reached similar conclusions. See, e.g., People v. Leonard, 264 N.W.2d 130, 131 (Mich. Ct. App. 1978) (per curiam) (noting that although the defendant admitted "spanking" the three-year-old child victim with a belt, the "medical and photographic evidence" showed "severe bruises," demonstrating "that the spanking was more like a beating"); State v. Arnold, 543 N.W.2d 600, 601-04 (Iowa 1996) (affirming the defendant's conviction for "intentionally us[ing] unreasonable force, torture or cruelty that resulted in physical injury to [a child]" where he disciplined his nine-year-old child by beating her with a leather belt, severely bruising her buttocks).

synonymous. However, "punch[ing]" involves the delivery of a "quick thrust" or "blow . . . with the fist," while "beating" means "hit[ting] repeatedly with [a] hand, fist, weapon, or other instrument so as to inflict pain." See punch, Webster's, supra; id. beat. The evidence established that Camp punched the child with her fist three times on the arm. The appellant, by contrast, beat the child with a dog leash, inflicting at least ten lashes with that instrument and leaving numerous linear marks and welts and significant bruising on various parts of B.E.'s body as she cried out in pain. Additionally, Camp was not in the room when the appellant beat the child. The evidence as a whole, including the difference in repetition and force that existed between Camp's punching or "jabbing" and the appellant's "full" beating, supports the trial court's reasoning that Camp's conduct was less culpable than the appellant's.

The trial court, as the fact finder, reasonably drew different conclusions from the evidence regarding the markedly different actions of the co-defendants. See Harbaugh, 209 Va. at 698 (stating that the fact finder's role is to "determine from the attending circumstances," including "the kind of marks or wounds inflicted on the body of the child," "whether punishment [inflicted] had been moderate or excessive"); Diehl, 9 Va. App. at 195 (holding that "whether punishment exceeds the bounds of moderation is a question for the trier of the facts").[9] Consequently, the evidence was sufficient to support the trial court's finding that the appellant's actions toward the victim constituted an unlawful beating within the meaning of Code § 40.1-103(A).

---

[9] To the extent the appellant suggests that an inconsistency between the conviction of a defendant and the acquittal of a co-defendant of the same crime in a joint bench trial may provide a basis for reversal, he cites no authority for this claim. See Rule 5A:20(e) (requiring that an appellant's opening brief must contain "the argument" and supporting "principles of law and authorities"); Jay v. Commonwealth, 275 Va. 510, 518-20 (2008) (permitting an appellate court to consider an assertion for which the appellant does not present legal authority as waived if that failure is significant). In any event, we do not consider such a claim because the facts in the record regarding the co-defendant are markedly different and support the trial court's conclusions in the appellant's case.

## B. The Appellant's Intent

The appellant additionally suggests that he lacked the requisite *mens rea* for the offense because his only intent was to discipline his daughter for repeatedly talking in class. *Mens rea* is "the unlawful intent or design necessary to any criminal act that is not a strict liability offense." Saunders v. Commonwealth, 31 Va. App. 321, 324 (2000). A violation of Code § 40.1-103(A) may be proved with evidence that the defendant committed one of the proscribed acts against a child either "willfully or negligently." See Barnes, 47 Va. App. at 110-11 (quoting Code § 40.1-103(A)).

"'[W]illfulness' is defined [in part] as '[t]he voluntary, intentional violation or disregard of a known legal duty.'" Pelloni v. Commonwealth, 65 Va. App. 733, 739 (2016) (third alteration in original) (emphasis omitted) (quoting willfulness, Black's Law Dictionary (10th ed. 2014)). When used in a criminal statute, the term "willfulness" additionally "imports knowledge and consciousness that injury will result" or "will probably result" "from the act done." Barrett v. Commonwealth, 268 Va. 170, 183 (2004).

With regard to the alternative method of proving the offense through negligence, the type of negligence required is criminal negligence. Barnes, 47 Va. App. at 111 (observing that to be criminal, all of the behavior proscribed by the statute, "from mere endangerment to actual torture," must be committed with at least "a threshold *mens rea* showing of 'criminal negligence'" (quoting Ellis v. Commonwealth, 29 Va. App. 548, 556-57 (1999))). A lesser standard than criminal willfulness, criminal negligence "involves a 'reckless or indifferent disregard of the rights of others, under circumstances . . . [that] make it not improbable that injury will be occasioned[] and [under which] the offender knows, or is charged with the knowledge of, the probable result of his acts.'" Id. (quoting Ellis, 29 Va. App. at 557 (quoting Bell v. Commonwealth, 170 Va. 597, 611-12 (1938))); see Kelly v. Commonwealth, 42 Va. App.

347, 356 (2004) (noting that criminal negligence "is judged under an objective standard and, therefore, may be found to exist where the offender either knew or should have known the probable results of his acts" (quoting Conrad v. Commonwealth, 31 Va. App. 113, 121-22 (1999) (*en banc*))).

Intent may and often must be proved with circumstantial evidence, including the statements and conduct of the accused. See Wells v. Commonwealth, 60 Va. App. 111, 119-20 (2012). Additionally, a defendant may act with more than one intent. Green v. Commonwealth, 72 Va. App. 193, 201 (2020); see Moody v. Commonwealth, 28 Va. App. 702, 707-08 (1998) (holding that a specific criminal intent may coexist with a less culpable intent). Therefore, the appellant's claim that he acted with the intent to administer corporal punishment, if accepted as true by the trier of fact, does not preclude a finding that he also acted either with the willful intent to inflict the injuries that resulted or with criminal negligence, lacking proper regard for whether his actions would result in those injuries. See Miller v. Commonwealth, 64 Va. App. 527, 536 (2015) (holding that "determining the credibility of the witnesses and the weight afforded [their] testimony . . . are matters left to the trier of fact, who has the ability to see and hear them as they testify"); Commonwealth v. Duncan, 267 Va. 377, 385 (2004) (noting that the fact finder may reject an accused's explanation and infer that he is "lying to conceal his guilt").

The evidence here supports a finding that the appellant acted with at least criminal negligence when he beat B.E. He intentionally delivered the multiple blows, and the record establishes that he either knew or should have known "it [was] not improbable that injury w[ould] be occasioned," the standard required to prove criminal negligence. Barnes, 47

Va. App. at 111 (quoting Ellis, 29 Va. App. at 557).[10] In finding him guilty, the trial court noted that the appellant heard the child "crying out . . . during each of these lashes" and thus that he "could understand and appreciate at the time that he continued to beat the child" that he was inflicting "hurt and pain." The court additionally found that the blows were "strong enough" to have caused bruising and welts "on the flesh of the victim[,] as depicted in the photographs" taken the day after the beating. The evidence established that the victim had "tons of bruising on the front and back[] of both of her legs, her bottom, and her right hip," as well as "bruising to . . . her face." These facts entirely support a finding that the appellant acted with at least criminal negligence when he beat B.E.

Accordingly, the evidence proves that the appellant acted with the requisite *mens rea* to support his conviction.

### III. CONCLUSION

The purpose of Code § 40.1-103 is to protect children. The statute does not prohibit a parent from using corporal punishment to discipline a child, but it requires a parent to employ moderation in doing so. The evidence here supports the trial court's finding that the appellant's conduct exceeded the bounds of due moderation and, coupled with at least criminally negligent intent, constituted a beating proscribed by Code § 40.1-103(A). Consequently, the trial court did not err in finding the appellant guilty, and we affirm his conviction.

<u>Affirmed.</u>

---

[10] The Commonwealth argues that the trial court found that the appellant inflicted the beating in a criminally willful manner. Assuming without deciding that the Commonwealth correctly characterizes the basis for the trial court's ruling, we need not reach this issue because this Court may affirm a conviction under the "right-result-different-reason" doctrine without "express[ing a] view on the correctness of the lower court's rationale." Rickman v. Commonwealth, 294 Va. 531, 542 (2017) (emphasis omitted); see also Spinner v. Commonwealth, 297 Va. 384, 391 (2019) (noting that the doctrine does not apply if additional findings of fact are necessary).