OPINION
Judge ALLARD, writing for the Court
Nathaniel Hicks Jr. was convicted of four counts of first-degree unlawful contact for telephoning his girlfriend, N.A. Hicks made these phone calls from jail, where he was awaiting trial on a charge that he assaulted NA. .
On appeal, Hicks argues that Alaska courts have no power to prohibit a defendant in pretrial detention from contacting the alleged victim of- the crime. According to Hicks, courts have the authority to prohibit a defendant in pretrial detention from engaging in this contact only if the victim separately petitions the court to issue a domestic violence protective order under Alaska Statute 18.66,
For the reasons explamed here, we reject Hicks's argument
Facts and proceedings
On July 20, 2018, Hicks was arraigned on a misdemeanor charge of assaulting his then-girlfriend, N.A. At Hicks's arraignment, the magistrate judge orally set conditions of bail, including the condition that Hicks not contact N.A. The judge later formalized her bail order in a written order that set out Hicks's conditions of bail release. Those written bail conditions also contained the provision that Hicks have "[no] direct or indirect contact" with NA. |
However, Hicks was never released on. bail. Instead, he remained in pretrial detention for several months. On October 25, 2013, Hicks called N.A. four times from jail, leaving messages on her voice mail. Based on these phone calls, the State charged Hicks with four counts of ﬁrst—degree unlawful contact.[1]
*978 Before trial, Hicks's attorney attacked these charges on several bases. The defense attorney argued, in passing, that Alaska courts have no authority to impose no-contact orders on defendants who are in pretrial detention. But the attorney also argued that Hicks had not received constitutionally adequate notice that the no-contact provision of the bail order applied to him when he was still in jail, The district court ruled against Hicks on these claims, and the case proceeded to trial.
At trial, the main issue before the jury was whether Hicks acted with the required culpable mental state-that is, whether he recklessly disregarded the cireumstance that his phone calls to N.A. violated the court's no-contact order.
Hicks's attorney argued that Flicks had not acted in reckless disregard of the order because he reasonably believed that the order only applied after he was released on bail. The prosecutor argued that Hicks knew or should have known that the no-contact bail order also applied to him in jail, and that even if he honestly believed that the no-contact provision did not take effect until he was released on bail, Hicks's belief was unreasonable.
The jury convicted Hicks of all four counts of first-degree unlawful contact. He now appeals.
Why we reject Hicks's claim that the judge had no authority to order him not to contact N.A. while he was in pretrial detention
As discussed in Chief Judge Mann-heimer's concurring opinion, there are significant problems with the way this case was prosecuted and argued to the jury. But Hicks does not raise any of these issues in this appeal. Instead, Hicks's sole claim on appeal is that, as a general matter, Alaska courts have no authority to order a defendant in pretrial detention to refrain from contacting the alleged victim of the crime.
Hicks points out that the Alaska legislature has enacted statutes expressly authorizing trial courts to issue no-contact orders as a condition of a defendant's bail release or as a component of a defendant's sentence.[2] But the legislature has enacted no equivalent statute expressly authorizing courts to impose no-contact orders on defendants in pretrial detention.
Hicks argues that, in the absence of a statute expressly authorizing the court to issue a no-contact order to a defendant in pretrial detention, the courts have no power to impose no-contact orders on pretrial detainees. Thus, Hicks contends, the judge's no-contact order was void, and he could not lawfully be convicted of violating it.
Hicks's argument rests on the erroneous assumption that the courts of this state have only the authority expressly conferred on them by statute. But this Court and the Alaska Supreme Court have repeatedly ree-ognized that "in the absence of a governing statute or constitutional provision, the judi-clary retains the power to declare the common law and to promulgate supervisory rules of practice to govern litigation." [3]
We relied on this principle in Dobrova v. State.[4] In that case, the sentencing court refused to release the defendant on bail pending the defendant's sentence appeal; the court concluded that it had no power to grant bail release to the defendant because the pertinent statute spoke only of bail for defendants who appeal their convictions, not their sentence.[5] Even though the bail statute did not expressly authorize courts to grant bail *979 release in sentence appeals, this Court held that courts had the common-law power to grant bail to defendants who appealed their sentences, and that, because the Alaska legislature had not limited that common-law power by statute, Alaska courts retained that power.[6] On petition for hearing, the supreme court affirmed our decision-emphasizing again that, in the absence of a statute granting or denying the right to bail pending a sentence appeal, "there exists no basis for concluding that the legislature intended to limit the inherent authority of the court."[7]
This same principle of common-law authority governs our . decision in Hicks's case. As the Court of Appeals for the Ninth Cireuit has explained, courts have the inherent power to protect victims and witnesses-a power that stems from the "indisputably ... broad powers [of the courts] to ensure the orderly and expeditious progress of a [criminal] trial." [8] This inherent judicial authority is not unlimited: it must be exercised in a manner that does not explicitly conflict with constitutional or statutory law,[9] and that does not defeat the policies embodied in those laws.[10] But unless the legislature removes or limits this common-law judicial power, courts may continue to exercise it.
Here, there is no statute that either grants or denies Alaska courts the authority to impose no-contact orders on defendants in pre'trial detention. Thus, Alaska trial courts retain their inherent authority to issue such no-contact orders to protect victims and other witnesses.[11] Moreover, the Alaska legislature directly recognized this inherent authority in 2013 when it amended AS 11.56.750 to. make it a crime for a defendant to violate a no-contact order "while under official detention." [12] The committee discussions of that legislation indicate that legislators presumed courts had the authority to impose these no-contact orders.[13]
Courts do. not have the authority to interfere with decisions that are committed to the discretion of the Department of Corrections while a defendant is incarcerated, such as the decision to house a prisoner in a particular facility.[14] But the no-contact order in this case did not infringe on that executive authority; the order only constrained Hicks's conduct, This type of no-contact order falls squarely within the authority of the courts.
*980 Hicks also argues that imposing a no-contact order on a person 'who is, in pretrial detention violates the presumption of innocence because it is a form of punishment., We find no merit to this claim. As a general matter, no-contact orders are not imposed to punish the defendant, but to protect vietims or other witnesses-thus ensuring public safety find the integrity of the judicial process.[15] Hicks has not shown that the no-contact order in his case was issued to punish him, rather than to protect the victim.
For these reasons, we uphold the district court's decision that Alaska courts have the authority to impose no-contact orders on defendants who remain in pretrial detention. We therefore affirm Hicks's unlawful contact convictions.
We emphasize that we are not deciding whether the arraigning judge's order actually prohibited Hicks from contacting N.A. while he was in jail (as opposed to prohibiting him from contacting N.A. after he was released on bail), or whether Hicks received constitutionally adequate notice of the no-contact order, as those questions are not before us.
As a general matter, however, we encourage courts to ensure that defendants are fully informed of the seope of any no-contact order so that it is clear to everyone whether the court is imposing the restriction as a condition of bail release, or to govern the defendant’s conduct while in custody, or both.
Conclusion
We AFFIRM the judgment of the district court. ,

. AS 11.56.750(a)(1}(A). Hicks was also charged with violating a domestic violence protective order, but those charges were later dismissed because H1cks had not received proper notice of the protective order,.

. See AS 12.30.011(b)(8) (providing that a court may require a defendant to avoid all contact with the alleged victim as a condition of bail release); AS 12.55.015(a)(12) (providing that a court may order a defendant to have no contact with a victim or witness as part of the defendant's sentence). ‘

. Hosier v. State, 957 P.2d 1360, 1363 (Alaska App. 1998) (citing Bauman v. Day, 892 P.2d 817, 828 (Alaska 1995)); see also Surina v. Buckalew, 629 P.2d 969, 973 (Alaska 1981); Beran v. State, 705 P.2d 1280, 1288 (Alaska App. 1985). See generally AS 01,10.010 ("So much of the common law not inconsistent with the Constitution of the State of Alaska or the Constitution of the United States or with any law passed by the legislature of the State of Alaska is the rule of decision in this state."). j

. 674 P.2d 834 (Alaska App. 1984).

. Id. at 835.

. Id.

. State v. Dobrova, 694 P.2d 157, 158 (Alaska 1985). n

. Wheeler v. United States, 640 F.2d 1116, 1122-25 (9th Cir. 1981) (quoting Bitter v. United States, 389 U.S. 15, 16, 88 S.Ct. 6, 19 LEd.2d 15 (1967)).

. See Hosier v. State, 957 P.2d 1360, 1363 (Alaska App. 1998); see also Titus v. State, 305 P.3d 1271, 1282 (Alaska 2013); Dominguez v. State, 181 P.3d 1111, 1114 (Alaska App. 2008); Lonis v. State, 998 P.2d 441, 445 (Alaska App. 2000); Stiegele v. State, 685 P.2d 1255, 1261 (Alaska App. 1984).

. Lonis, 998 P.2d at 445.

. This authority is subject to the requirements of due process, equal protection, and other constitutional constraints, See, e.g., Williams v. State, 151 P.3d 460 (Alaska App. 2006) (striking down as unconstitutional bail statutory provision that prohibited all persons charged with domestic violence from returning to the residence of the alleged victim while on pretrial release-without any opportunity for judicial review or any judicial findings).

. AS 11.56.750(a)(1)(A)@ii) (effective July 1, 2013), as amended by ch. 43, §§ 9, 48, SLA 2013. .

. See ch. 43, § 9, SLA 2013; Minutes of Senate Judiciary Committee, Senate Bill 22, testimony of Assistant Attorney General Anne Carpeneti, Department of Law, 2:19:40 pm. (Jan. 30, 2013); Minutes of Senate Judiciary Committee, Senate Bill 22, testimony of Assistant Attorney General Anne Carpeneti, Department of Law, 1:45:17 p.m. (Feb. 11, 2013); Minutes of Senate Judiciary Committee, Senate Bill 22, testimony of Assistant Attorney General Anne Carpeneti, Department of Law, 1:55:00 pam. (Feb. 18, 2013); Minutes of Senate Judiciary Committee, Senate Bill 22, testimony of Assistant Attorney General Anne Carpeneti, Department of Law, 9:51:18 a.m. (Mar. 18, 2013); Minutes of Senate Judiciary Committee, Senate Bill 22, testimony of Assistant Attorney General Anne Carpeneti, Department of Law, 2:07:24 pm. (Mar. 22, 2013); see also January 15, 2013, Governor's Transmittal Letter for Senate Bill 22, 2013 Senate Journal 38 (stating the bill would "restrict offenders in custody from contacting a victim").

. - See Rust v. State, 582 P.2d 134, 137-38, modified on rehearing; 584 P.2d 38 (Alaska 1978); see also State v. Hiser, 924 P.2d 1024, 1025 (Alaska App. 1996).

. See, e.g., Goodwin v. Commonwealth, 23 Va. App. 475, 477 S.E.2d 781, 784 (1996) (concluding that a protective order was remedial and did not constitute punishment for double jeopardy purposes); In re Arseneau, 98 Wash.App. 368, 989 P.2d 1197, 1203-04 (1999) (holding that a prison-imposed no-contact order was not punitive and did not violate the double jeopardy or ex post facto clauses).