# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **22nd** *day of* **November, 2022**.

Osman Osman, Appellant,

against        Record No. 1416-21-4
Circuit Court No. FE-2019-0000407

Commonwealth of Virginia, Appellee.

Upon a Petition for Rehearing

Before Judges Huff, Raphael and Lorish

On November 9, 2022 came appellee, by the Attorney General of Virginia, and filed a petition praying that the Court set aside the judgment rendered herein on October 25, 2022, and grant a rehearing thereof.

On consideration whereof, the petition for rehearing is granted, the opinion rendered on October 25, 2022 is withdrawn, the mandate entered on that date is vacated, and this appeal will be reconsidered by the panel of judges that originally considered the matter.

Pursuant to Rule 5A:35(a), the appellant may file an answering brief within 21 days of the date of entry of this order. Should the appellee elect to do so, she may file a reply brief within 14 days of the date on which the appellant's brief is filed. An electronic version of the brief shall be filed with the Court and served on opposing counsel.[1]

A Copy,

Teste:

A. John Vollino, Clerk

By:     *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

---

[1] The guidelines for filing electronic briefs can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

Present:   Judges Huff, Raphael and Lorish
Argued at Arlington, Virginia

PUBLISHED

OSMAN OSMAN

v.       Record No. 1416-21-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE GLEN A. HUFF
OCTOBER 25, 2022

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Penney S. Azcarate, Judge

John W. Pickett (Pickett Law Group, PLLC, on brief), for
appellant.  Appellant submitting on brief.

Katherine Quinlan Adelfio, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Osman Osman ("appellant") was convicted by a jury in Fairfax County Circuit Court (the

"trial court") of four counts involving violations of a protective order, two counts of felony

abduction, and one count of misdemeanor domestic assault against a family member.  Appellant

now appeals those convictions on the following grounds:  First, appellant challenges the trial

court's admission of his prior bad acts.  Second, appellant argues that the Code § 18.2-47 charge

of abducting his child, J.O., should have proceeded as a misdemeanor rather than a felony.

Third, appellant alleges that the period of delay between his arrest and eventual trial violated

both his statutory and constitutional rights to a speedy trial.  Fourth, and finally, appellant claims

that the evidence presented at trial was insufficient to sustain a felony conviction of abducting

his wife because the abduction was merely incidental to the assault of his wife.

For the following reasons, this Court affirms all of appellant's convictions except for the

felony abduction of J.O.  As to that single assignment of error, this Court agrees that the trial

court erred by permitting the Commonwealth to prosecute appellant's abduction of J.O. as a felony, rather than a misdemeanor, in direct contradiction to the provisions of Code § 18.2-47(D). Therefore, this Court reverses and vacates appellant's felony abduction conviction for J.O. and affirms appellant's remaining convictions.

## I. BACKGROUND

In accordance with well-settled principles of appellate review, this Court considers the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, this Court discards any evidence presented by appellant that conflicts with the Commonwealth's evidence and regards as true all credible evidence favorable to the Commonwealth and all reasonable inferences drawn therefrom. *Gerald*, 295 Va. at 473; *Parks v. Commonwealth*, 221 Va. 492, 498 (1980).

As of March 24, 2018, appellant was married to Ellina Letyvska and they had one child together, named J.O. Due to ongoing physical and emotional abuse by appellant, Ms. Letyvska left the marital home in February 2018 and sought a temporary preliminary protective order for herself and J.O. The Fairfax County Juvenile and Domestic Relations District Court (the "JDR court") issued an *ex parte* preliminary protective order on February 22, 2018 ("February PPO"), under Code § 16.1-253.1, based on Ms. Letyvska's representations that she believed appellant was a threat to her life and safety.

The February PPO prohibited appellant from having any contact with the protected parties—Ms. Letyvska and J.O.—and from being within five hundred feet of them at all times. A full hearing on the February PPO was scheduled for March 8, 2018, at which appellant requested more time to retain and consult with counsel. In granting appellant's request, the JDR court issued an extended preliminary protective order ("March PPO") and scheduled a full

- 2 -

hearing on that order for March 27, 2018. The terms of the March PPO remained the same as those in the February PPO, including the provision prohibiting appellant from having any contact with either Ms. Letyvska or J.O.

Appellant violated the March PPO on March 24, 2018, at approximately 12:00 p.m. in the parking lot next to Gold's Gym in Chantilly, Virginia (the "gym"). On that date, a Saturday, Ms. Letyvska took J.O.—who was two and a half years old at that time—to the gym with her in the morning and parked her car in the lot next to the gym. At approximately 12:00 p.m., Ms. Letyvska left the gym and walked towards her car while holding J.O. in her left arm. As she opened the passenger side door to put down her bags, appellant appeared behind her and demanded that she come with him. When Ms. Letyvska did not immediately comply, appellant began dragging and pushing her towards the open back door of a Ford SUV (the "SUV") parked perpendicularly approximately five to six feet behind Ms. Letyvska's car.

At trial, Ms. Letyvska testified that the SUV was not the vehicle appellant usually drove and that she had in fact never seen that SUV before. She tried to resist appellant by falling to the ground to make it harder for appellant to get her into the SUV. While Ms. Letyvska was sitting on the ground under the open door with her back against the SUV's rear tire, appellant began hitting Ms. Letyvska on the back of her head and neck with a closed fist. Ms. Letyvska was still holding J.O., who was screaming and crying in her arms. Appellant then began trying to pull J.O. away from Ms. Letyvska.

This commotion drew the attention of David Sobeck, who was also a member of the gym as well as an off-duty special agent with the Pentagon Force Protection Agency. After leaving the gym and getting into his car in the parking lot, Mr. Sobeck saw Ms. Letyvska holding J.O. and sitting next to the left rear tire of the SUV with her back pressed against the car while

appellant stood over her, gesticulating wildly with his arms. Concerned by what he saw, Mr. Sobeck got out of his car and walked toward Ms. Letyvska and appellant.

When he was approximately twenty to thirty feet away, Mr. Sobeck saw that Ms. Letyvska was "completely distraught," and he heard her screaming to call 9-1-1 because she needed help. Mr. Sobeck also heard the child in Ms. Letyvska's arms crying. Mr. Sobeck continued to approach, but when he was only approximately five to seven feet away, appellant pulled a firearm out from under his sweatshirt and pointed it at Mr. Sobeck, saying, "Get the fuck out of here or I'll fucking shoot you." At appellant's trial, Ms. Letyvska testified to also seeing appellant pointing the gun at Mr. Sobeck, although she didn't see from where appellant had retrieved it. Appellant claimed at trial that he only brandished a "BB gun" at Mr. Sobeck.

Regardless, Mr. Sobeck retreated to his car and called 9-1-1. Appellant then resumed trying to force Ms. Letyvska into the SUV. Before appellant succeeded, another bystander drove by and indicated that the police were on their way. In response, appellant got into the driver's seat of the SUV and drove away without Ms. Letyvska and J.O. Evidence later presented at trial, including appellant's own testimony, established that appellant had rented the SUV from Avis Budget on March 23, 2018, with a return date of March 24, 2018, but that appellant instead abandoned the vehicle on that date and fled to New York after his encounter with Ms. Letyvska and J.O. in the gym parking lot.[1] Shortly after appellant left the gym, the police arrived in the parking lot and interviewed both Ms. Letyvska and Mr. Sobeck.

In response to the events of March 24, 2018, Detectives Susan Anderton and T.L. Hulse executed a search warrant of appellant's home on March 29, 2018. Although appellant's parents were in the home at that time, appellant was not present and did not return.

---

[1] Avis Budget later reported the SUV as stolen.

Six months later, on September 20, 2018, police officer Leonardo Buenaventura received a dispatch regarding an abandoned vehicle. Upon arrival, he saw the vehicle was a Ford SUV with tags that had been reported stolen. He found a Green Card in the center console with appellant's name, which was linked to an "outstanding warrant for a criminal case." Officer Buenaventura immediately passed this information along to Detectives Anderton and Hulse who then executed a search warrant on the SUV. The evidence presented at appellant's trial proved that this SUV was the same one into which appellant had tried to force Ms. Letyvska and J.O. on March 24, 2018.

Detective Anderton testified at appellant's trial that the back passenger seats of the SUV were folded down and two black zip ties were secured around the child safety seat restraint bar in the backseat area. She described the zip ties as being fashioned in a loop such that a person's wrist could fit through it and the zip tie could then be pulled tighter. Detective Anderton further testified that the gym-size duffel bag found behind the driver's seat contained diapers, men's clothing, and assorted papers, including a photocopy of appellant's Bulgarian passport and United States permanent resident card. Appellant admitted at trial that the items found in the SUV, including the duffel bag with clothing and diapers as well as the Green Card and other documents, belonged to him.

Through the ongoing police investigation, Sergeant Josh Moser, a detective from the fugitive task force, discovered evidence that appellant was staying in New York City. He and Detective Hulse traveled to New York where, with the assistance of United States Marshals, they arrested appellant on November 27, 2018. Appellant was extradited to Virginia in December 2018 and held without bond on charges of abduction, assault, and violating a protective order.

The JDR court scheduled a preliminary hearing on appellant's charges for January 14, 2019, which was continued until February 21, 2019, on the joint request of both parties.

Appellant then made two additional requests for adjournment on February 21, 2019, and March 28, 2019. The JDR court finally held the preliminary hearing on May 3, 2019, at which it found probable cause to believe appellant had committed a felony and certified the case to the trial court.

The parties first appeared before the trial court on May 23, 2019, and the case was continued to May 31, 2019, for selection of a trial date and for appointment of new counsel at appellant's request. On May 31, 2019, the trial court set a trial date of September 23, 2019. Appellant requested a continuance on September 9, 2019, due to the unavailability of two defense witnesses. The trial was rescheduled for January 13, 2020, via a calendar control order ("CCO"), in which defense counsel initialed and checked the box for a waiver of speedy trial.

On December 30, 2019, appellant again sought a continuance for additional time to review discovery materials provided by the Commonwealth. The trial was rescheduled for March 30, 2020, via a CCO issued on January 8, 2020, in which defense counsel again checked the waiver of speedy trial box.

The Supreme Court of Virginia issued its first emergency order relating to the COVID-19 pandemic on March 16, 2020, in which it restricted nonemergency proceedings "including jury trials, subject to a defendant's right to a speedy trial." Order Declaring a Judicial Emergency in Response to COVID-19 Emergency, 1-2 (Va. Mar. 16, 2020).[2] The Court subsequently issued a series of additional orders extending the judicial emergency and tolling statutory speedy trial

---

[2] Additional references in this opinion to the Supreme Court's first order and subsequent related orders are to "emergency order" or "EDO of [date]." *See* EDO of Apr. 22, 2020, at 1 (referring to the Supreme Court's first three orders "collectively . . . as the 'Emergency Declaration Orders'").

deadlines.[3]  *See* EDOs of Mar. 27, 2020, to May 27, 2022.[4]  In September 2020, the Court explicitly clarified that the tolling provisions remained in effect despite approval of any circuit court's "plan to restart jury trials" and would continue to remain in effect "unless amended by future order."  EDO of Sept. 11, 2020, at 1-2.  The Court issued no such amendment prior to appellant's trial in July 2021.  In fact, the Court's fortieth emergency order extending the judicial emergency and tolling statutory speedy trial deadlines was issued on May 27, 2022.  *See* EDO of May 27, 2022 ("While the Speedy Trial Act, Va. Code § 19.2-243, has its own tolling provisions, speedy trial act deadlines continue to be tolled by this order during the ongoing Period of Judicial Emergency, currently through June 22, 2022.").

In response to the Court's March 16, 2020 emergency order, the trial court issued a memorandum on the same day in which it suspended all trials for thirty days and set all cases within that period, including appellant's case, for status on the criminal term day docket on May 21, 2020.  Appellant filed a motion on March 25, 2020, objecting to this continuance and asserting his right to a speedy trial.  The trial court heard arguments as to this matter on March 30, 2020, and appellant agreed with the trial court's determination that the five months allotted for prosecution under Virginia's Speedy Trial Act (codified in Code § 19.2-243) did not expire until April 15, 2020.  Accordingly, the trial court scheduled the case for a bench trial on April 6, 2020, and granted appellant's request for substitution of counsel.

On April 1, 2020, trial was again rescheduled, via a CCO, to June 1, 2020, at the request of appellant who waived speedy trial for that period.  The Commonwealth requested an

---

[3] The Court later clarified that its orders tolling speedy trial deadlines referred only to a defendant's statutory, rather than constitutional, right to a speedy trial.  *See* EDO of May 1, 2020, at 2.

[4] All of the Court's judicial emergency orders for the COVID-19 pandemic can be found on the Court's website at the following link: https://www.vacourts.gov/news/items/covid/scv_emergency_orders.pdf.

adjournment on May 27, 2020, and the case was continued to August 3, 2020, via a CCO. At the pre-trial status hearing on July 30, 2020, appellant asked for new counsel and invoked his right to a jury trial.[5] The trial court advised appellant that his request for a jury trial meant that his case would likely not be heard until February 2021 due to the backlog of trials caused by the COVID-19 pandemic. Appellant acknowledged that he understood, and the trial court adjourned the case to August 3, 2020, for selection of a trial date. In doing so, the court explicitly noted that "speedy trial is tolled during this time until [the case is] set for a new date in February." Appellant did not object.

The parties appeared before the trial court on August 3, 2020, and selected a trial date of February 1, 2021. Appellant explicitly waived speedy trial for the entirety of that adjournment. On October 1, 2020, the trial court informed the parties that the February trial date needed to be changed because pandemic-related court congestion had "wiped out February 1st already with other long cases." Due to the parties' scheduling conflicts, the trial court set trial to begin on May 5, 2021, and appellant did not object to that date.

On March 26, 2021, the trial court held a hearing on a number of pre-trial motions, including the Commonwealth's motion *in limine* to admit prior bad acts of appellant at trial. Specifically, the Commonwealth sought to introduce evidence of appellant's past physical and verbal abuse of Ms. Letyvska. After hearing arguments from both parties, the trial court determined that the evidence was admissible to prove motive and intent, as well as the prior relationship between appellant and Ms. Letyvska, and that the probative value of such evidence "outweighs any prejudicial effect." The trial court also indicated that it would issue a limiting instruction advising the jury to only consider such evidence for the purposes of "motive of intent and relationship."

_____

[5] The trial court denied appellant's request for new counsel.

Based on a joint continuance request issued via a CCO on April 19, 2021, appellant's trial was rescheduled to June 28, 2021. Only a few days later, on April 23, 2021, the parties appeared before the trial court at the Commonwealth's request for another adjournment. The Commonwealth informed the trial court that Ms. Letyvska and a "key detective" were unavailable to testify on June 28, 2021. In response to the trial court's questioning, the Commonwealth explained that they had previously "reach[ed] out" to the witnesses to ascertain availability but had not received confirmation in advance of agreeing to the June 28, 2021 trial date. Over appellant's objection, the trial court adjourned the case to July 28, 2021.

On July 27, 2021, appellant filed a motion to dismiss based on speedy trial grounds, and the trial court heard arguments from the parties on July 28, 2021. The trial court ultimately held that neither appellant's statutory nor constitutional right to a speedy trial had been violated. With regard to the statutory right, the trial court found that most of the continuance motions "were either on the defendant's request or a joint request" and that the emergency orders relating to the COVID-19 pandemic tolled the speedy trial deadlines under Code § 19.2-243 from March 16, 2020, to the current date. The trial court then held that appellant's constitutional right to a speedy trial was not violated because:

> [l]ooking at the factors, the length of delay is not unreasonable due
> to the reasons for the delay, mainly that the defendant needed to
> get counsel and be prepared for trial today. And also because of
> COVID and the pandemic reasons for the delay. So based on those
> reasons the Court does not find this case is prejudiced.

After the trial court denied appellant's motion to dismiss, the case proceeded to trial by jury.

In accordance with the trial court's March 26, 2021 decision regarding the admissibility of appellant's prior bad acts, the Commonwealth offered testimony at trial from Ms. Letyvska about the abuse she experienced from appellant during their marriage. Specifically, Ms. Letyvska testified that appellant came to her place of employment several times and "made a

- 9 -

huge scene" by screaming and cursing at her in public. She also testified that the first time appellant physically assaulted her was in 2016 when he came home in the middle of the night and Ms. Letyvska could not get J.O. to stop crying. In particular, appellant pulled Ms. Letyvska's hair and punched her in the face. Similar incidents occurred several times throughout the first two years of J.O.'s life whenever Ms. Letyvska could not stop J.O. from crying during the night. Ms. Letyvska further described one incident in February 2017 where appellant blamed her for J.O. being sick and started punching her in the face and choking her while she was holding J.O. in one arm.

After the Commonwealth finished presenting its case, appellant moved to strike all charges based on a claim that the Commonwealth failed to prove appellant's identity. Appellant also challenged the sufficiency of the evidence regarding his abduction of Ms. Letyvska by specifically alleging there was no "proof that he intended to deprive her of her liberty" and her testimony was not credible. The trial court disagreed, finding that Ms. Letyvska's testimony was not "inherently unreliable or incredible as to not allow the credibility of the witness to be decided by the Jury. . . . As to Count 1, abduction, there is evidence of asportation or the inability of her to leave, therefore that goes to the jury."

Next, appellant argued that the abduction of J.O. was improperly charged as a felony rather than a misdemeanor under Code § 18.2-47(D) because appellant was J.O.'s parent and subject to contempt for violating the March PPO. The trial court again disagreed, finding that "based on *Diehl v. Commonwealth*[, 9 Va. App. 191 (1989)]," the felony abduction charge regarding J.O. "can go forward." Appellant then presented his own evidence at trial, after which

- 10 -

he renewed the motion to strike based on the same grounds as previously stated.[6] For the same reasons, the trial court denied the motion.

Consistent with its pre-trial ruling, the trial court issued a limiting instruction to the jury on August 3, 2021, advising them that they could only consider the evidence of appellant's prior bad acts "as evidence of the defendant's motive and/or conduct and feelings toward the victims and relations between them for which he is on trial and for no other purpose." Later that same day, the jury returned a verdict of guilty for all charges, convicting appellant of two counts under Code § 18.2-47 for felony abduction of Ms. Letyvska and J.O., one count of misdemeanor domestic assault under Code § 18.2-57.2, and four counts under Code § 16.1-253.2 for violating a protective order by stalking, by committing assault and battery, by violating the order's no-contact provision, and by violating the order while armed with a deadly weapon.

On November 19, 2021, the trial court sentenced appellant to an aggregate sentence of twenty years' incarceration.[7] This appeal followed.

## II. ANALYSIS

In challenging his convictions, appellant alleges four reversible errors by the trial court. After considering the merits of appellant's assignments of error, this Court affirms the trial court's judgments in part but reverses and vacates appellant's felony conviction for abducting

---

[6] On August 3, 2021, defense counsel renewed his "previous motion to strike for all the grounds and reasons stated before, with the additional arguments regarding the violation of the protective order while in possession of a deadly weapon." Appellant does not raise that latter argument in this appeal.

[7] Appellant was sentenced to the following periods of incarceration: five years for abducting Ms. Letyvska (Count I), ten years for abducting J.O. (Count V), two years for violating the March PPO while armed with a deadly weapon (Count III), one year for violating the March PPO by stalking (Count VII), one year for violating the March PPO by committing assault and battery (Count VIII), six months for assault and battery (Count IV), and six months for violating the March PPO's no-contact provision (Count IX).

- 11 -

J.O. This Court declines to consider the merits of appellant's final assignment of error because it was not properly preserved for appellate review.

### A. Appellant's First Assignment of Error: The Trial Court Erred in Permitting the Commonwealth to Admit Evidence of Appellant's Prior Acts of Abuse at Trial

Appellant argues that the trial court should have prohibited the Commonwealth from admitting evidence of appellant's prior physical and verbal abuse of Ms. Letyvska because the prejudicial effect of such evidence outweighed any probative value.

"Given the 'broad discretion' of a trial judge over evidentiary matters," this Court reviews a trial court's decision regarding the admission or exclusion of evidence under a "deferential abuse-of-discretion standard." *Thomas v. Commonwealth*, 44 Va. App. 741, 753 (quoting *Seaton v. Commonwealth*, 42 Va. App. 739, 752 (2004)), *adopted upon reh'g en banc*, 45 Va. App. 811 (2005). This Court cannot substitute its own judgment for that of the trial court and must instead determine "whether the record fairly supports the trial court's action." *Clark v. Commonwealth*, 73 Va. App. 695, 705 (2021) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). This deference extends to the trial court's "responsibility for balancing the competing considerations of probative value and prejudice" when considering the admission of evidence. *Ortiz v. Commonwealth*, 276 Va. 705, 715 (2008) (quoting *Spencer v. Commonwealth*, 240 Va. 78, 90 (1990)); *see also Kenner v. Commonwealth*, 299 Va. 414, 424 (2021).

As a general rule, evidence of a defendant's prior bad acts or other crimes is inadmissible "to prove the character trait of a person in order to show that the person acted in conformity therewith." Va. R. Evid. 2:404(b). However, such evidence may be admissible to prove motive and intent, but *only if* the trial court determines that "the legitimate probative value of such proof outweighs its incidental prejudice." *Id.*; *see Lambert v. Commonwealth*, 70 Va. App. 740, 750 (2019).

- 12 -

Evidence of prior bad acts, including domestic violence, is also admissible "when it 'shows the conduct or attitude of the accused toward his victim[,] establishes the relationship between the parties,'" or "'is connected with or leads up to the offense for which the accused is on trial,'" so long as the probative value outweighs any prejudicial effect. *Conley v. Commonwealth*, 74 Va. App. 658, 670-71 (2022) (first quoting *Kenner*, 299 Va. at 424; and then quoting *Woodfin v. Commonwealth*, 236 Va. 89, 95 (1988)). This Court has also found that even abuse from a year prior to the charged offense "was probative to show the defendant's motive and intent in committing the alleged acts" and to "prove the relationship between the defendant and his victims." *Callahan v. Commonwealth*, 8 Va. App. 135, 141 (1989).

Under these prevailing standards, the trial court did not abuse its discretion in admitting evidence of appellant's prior bad acts. As the trial court explained, those "prior assaults against the victim do have probative value to prove motive and intent and also a prior relationship in this particular case and that outweighs any prejudicial effect." The trial court also issued a limiting instruction to the jury advising them that they could consider such testimony only for the permitted purposes of motive, intent, and prior relationship. *See Brooks v. Commonwealth*, 73 Va. App. 133, 148 (2021) ("The danger of unfair prejudice can also be mitigated by an instruction to the jury that limits their consideration of other crimes evidence to its proper purposes and application to each offense charged.").

Accordingly, this Court affirms the trial court's judgment that evidence of appellant's prior bad acts and other crimes was admissible.

### B. Appellant's Second Assignment of Error: The Trial Court Erred in Denying Appellant's Motion to Strike the Felony Abduction Charge for J.O.

Next, appellant argues that the trial court should have granted his motion to strike the felony abduction charge as to J.O., under Code § 18.2-47. Specifically, appellant argues that he

could only have been indicted pursuant to Code § 18.2-47(D), which makes a parent's abduction of their child punishable as a misdemeanor rather than a felony under certain circumstances.

An issue of statutory interpretation and application is a question of law reviewed *de novo* on appeal. *See Eley v. Commonwealth*, 70 Va. App. 158, 162 (2019); *Blake v. Commonwealth*, 288 Va. 375, 381 (2014) ("We . . . review *de novo* the scope and application of the statute under which the defendant was convicted."). Under Code § 18.2-47(A), a person is guilty of abduction when, "by force, intimidation or deception, and without legal justification or excuse," he "seizes, takes, transports, detains or secretes another person with the intent to deprive" them of their personal liberty. Subsection (C) provides the default rule that an abduction "for which no punishment is otherwise prescribed shall be punished as a Class 5 felony."

In contrast, Code § 18.2-47(D) provides that "[i]f an offense under subsection A is committed by the parent of the person abducted and *punishable* as contempt of court in any proceeding then pending, the offense shall be a Class 1 misdemeanor in addition to being punishable as contempt of court." (Emphasis added). The key word here is "punishable," meaning conduct that by law *could be punished* as contempt of court, regardless of whether the Commonwealth actually chose to bring such charges in addition to a prosecution for abduction. Appellant argues that, given the March PPO prohibiting contact with J.O., his prosecution for abduction under Code § 18.2-47 could only proceed as a misdemeanor, rather than a felony, based on the provisions of subsection (D).

The March PPO, which was still in effect and pending a full hearing when appellant abducted J.O. on March 24, 2018, was issued under Code § 16.1-253.1. Subsection (C) of that statute states: "[e]xcept as otherwise provided in § 16.1-253.2," a violation of a protective order issued under this statute "*shall constitute contempt of court*." (Emphasis added). Code § 16.1-253.2 addresses specific types of violations of Code § 16.1-253.1 protective orders,

including violations of protective order provisions prohibiting "further acts of family abuse," "criminal offenses," or any contact "with the allegedly abused person" named as the protected party. Code § 16.1-253.2(A). This section explicitly states that "[i]*n addition to any other penalty provided by law*," a person who commits such violations "is guilty of a Class 1 misdemeanor." *Id.* (emphasis added).

The opening phrase "in addition to" clearly indicates that a person who violates a protective order in a way specified by Code § 16.1-253.2(A) is both guilty of a Class 1 misdemeanor *and* subject to "any other penalty provided by law." *Id.* Reading these statutes together, the language "other penalty provided by law" in Code § 16.1-253.2(A) would include "contempt of court" under Code § 16.1-253.1(C). *See George v. Commonwealth*, 51 Va. App. 137, 144-45 (2008) (interpreting the language "in addition to any other penalties provided by law" in a statute to mean that the "criminal penalty provided therein was not exclusive" and that the General Assembly did not intend for prosecution under that statute to "be the Commonwealth's exclusive option for punishing conduct such as appellant's").

In contrast to these interlocking statutes, subsections (C) and (D) of Code § 18.2-47 are mutually exclusive. A person who commits an abduction, as defined in subsection (A) of Code § 18.2-47, can only be charged with and convicted of a Class 5 felony—the default penalty provided by subsection (C) of Code § 18.2-47—if no other subsection providing a different penalty applies. Thus, where a parent's abduction of their child qualifies as a Class 1 misdemeanor under subsection (D) of Code § 18.2-47, the same conduct cannot also constitute a Class 5 felony because the misdemeanor penalty *replaces* the statute's default felony penalty.

Accordingly, because appellant's abduction of J.O. meets the criteria of Code § 18.2-47(D)—appellant is a parent to J.O. and the abduction was *punishable* as contempt for

- 15 -

violating the March PPO—the trial court erred in denying appellant's motion to strike the felony abduction charge under Code § 18.2-47.[8]

C. Appellant's Third Assignment of Error: The Trial Court Erred in Denying
Appellant's Motion to Dismiss for Violating His Rights to a Speedy Trial

Appellant also argues that the trial court should have granted his motion to dismiss all the charges against him because the Commonwealth violated both his statutory and constitutional rights to a speedy trial. This Court rejects that claim and affirms the trial court's judgment that neither appellant's statutory nor constitutional speedy trial rights were violated.

As explained further below, "the statutory right to a speedy trial and the constitutional right to a speedy trial are separate, though related, rights that utilize different frameworks and focus on different elements." *Brown v. Commonwealth*, 75 Va. App. 388, 406 (2022). However, because both statutory and constitutional speedy trial challenges present "a mixed question of law and fact," this Court gives deference to the trial court's factual findings but reviews statutory interpretations and legal conclusions *de novo. Young v. Commonwealth*, 297 Va. 443, 450 (2019); *see Ali v. Commonwealth*, 75 Va. App. 16, 33 (2022) ("[Factual] findings may not be disturbed unless 'plainly wrong' or 'without evidence to support them.'" (quoting *Wilkins v. Commonwealth*, 292 Va. 2, 7 (2016))).

---

[8] In denying appellant's motion to strike, the trial court based its decision on the Commonwealth's reference to *Diehl*, 9 Va. App. at 191. In that case, this Court found Code § 18.2-47(D) inapplicable because, prior to Diehl's act of abduction, there was no proceeding pending against him for which he could have been punished for contempt. For example, Diehl was not subject to any protective order or other court mandate at the time he abducted his child. Those facts are inapposite to the case at hand where appellant was in fact subject to the March PPO—a pending proceeding scheduled for full hearing in the JDR court on March 27, 2018, any violation of which could have been punished as contempt of court under Code § 16.1-253.1(C)— at the time he abducted J.O. It is immaterial that the Commonwealth did not charge appellant with contempt of court in addition to abduction.

<u>Appellant's Statutory Right to a Speedy Trial Not Violated</u>

Code § 19.2-243 provides specific time limits "within which an accused must be tried, absent tolling or other statutory exceptions." *Brown*, 75 Va. App. at 406. As applicable here, the statute requires trial to commence for an incarcerated individual within five months from the preliminary hearing at which the district court found probable cause to believe he committed a felony.[9] Code § 19.2-243. That five-month requirement equates to "152 and a fraction days." *Balance v. Commonwealth*, 21 Va. App. 1, 6 (1995).

However, the statute also enumerates several exceptions to this time limit, including a "failure to try the accused . . . caused . . . [b]y a natural disaster, civil disorder, or act of God." Code § 19.2-243. This Court has recently concluded that the COVID-19 pandemic qualifies as a "natural disaster" and thus justifies the tolling of statutory speedy trial deadlines provided in the emergency orders executed between March 16, 2020, and May 27, 2022. *See Ali*, 75 Va. App. at 31-33; *Brown*, 75 Va. App. at 402-03. Accordingly, the statutory speedy trial clock did not run between the initial emergency order issued on March 16, 2020, and the commencement of appellant's trial on July 28, 2021.

The remaining period of time for this Court to consider then is that between appellant's preliminary hearing on May 3, 2019, and the start of the pandemic-related tolling on March 16, 2020.[10] For the reasons stated below, only 121 days during that time are chargeable to the

---

[9] The period of time between the arrest of the accused and the preliminary hearing has no bearing on the accused's statutory speedy trial rights under Code § 19.2-243, although it is considered as part of a constitutional speedy trial claim.

[10] As mentioned previously, "appellant's statutory speedy trial deadline was tolled due to the COVID-19 emergency, [but] his constitutional speedy trial rights remained in effect and were not suspended." *Brown*, 75 Va. App. at 404. This Court reviews separately the effect of those orders in the context of appellant's constitutional speedy trial claim.

Commonwealth for statutory speedy trial purposes; the remainder is tolled under the provisions of Code § 19.2-243.

Generally, the time between the preliminary hearing and initial trial date "counts against the Commonwealth for speedy trial purposes." *Palmer v. Commonwealth*, No. 0885-21-1, slip op. at 11 (Va. Ct. App. Aug. 9, 2022) (citing *Turner v. Commonwealth*, 68 Va. App. 72, 79 (2017)).[11] However, a "continuance granted on the motion of the accused or his counsel" tolls the statutory speedy trial clock. Code § 19.2-243. Here, the Commonwealth acknowledges that the twenty days from appellant's preliminary hearing in the JDR court on May 3, 2019, to the first appearance in the trial court on May 23, 2019, count toward the speedy trial deadline. Conversely, the adjournment from May 23 to May 31, 2019, made for purposes of setting a trial date and appointing new counsel at appellant's request, does not count towards the speedy trial deadline. *See* Code 19.2-243; *see also Palmer*, slip op. at 12 ("[T]his Court has charged to a defendant the delay between appointing new counsel for the defendant and the new trial date." (citing *Balance*, 21 Va. App. at 6)).

On May 31, 2019, the trial court set a trial date of September 23, 2019. Only 101 days of this period are chargeable to the Commonwealth because appellant requested a continuance on September 9, 2019, which the trial court granted, thus stopping the speedy trial clock. *See Palmer*, slip op. at 12 ("Code § 19.2-243's restrictions do not apply to speedy trial deadline calculations when a defendant or his counsel requests the continuance, concurs to the Commonwealth's continuance motion, or fails to timely object to that motion.").

---

[11] Unpublished opinions, although not binding, may be cited as "informative." Rule 5A:1(f).

- 18 -

Based on appellant's September 9, 2019 continuance request, the trial court set a new trial date of January 13, 2020, to which appellant did not object.[12] Appellant requested another continuance in December 2019, which the trial court granted on January 8, 2020, and the case was adjourned for trial on March 30, 2020. That period of time is also tolled under Code § 19.2-243 because appellant made the adjournment request.[13] As already discussed above, the Supreme Court issued its first emergency order on March 16, 2020, and the statutory speedy trial deadlines were tolled from that date through the start of appellant's trial in July 2021.

Because only 121 days of Code § 19.2-243's allotted 152-and-a-fraction days ran, the trial court did not err in concluding that appellant's statutory right to a speedy trial was not violated.

Appellant's Constitutional Right to a Speedy Trial Not Violated

In contrast to the statutory right to a speedy trial, the constitutional right to a speedy trial under the Sixth Amendment of the United States Constitution "is governed by a balancing test that is not tied inextricably to calendar dates." *Brown*, 75 Va. App. at 406-07 (citing *Barker v. Wingo*, 407 U.S. 514, 521 (1972)). The four factors of that test are: (1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. An appellant must establish that those factors, when considered together, "weigh in his favor." *Ali*, 75 Va. App. at 35 (quoting *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995)).

---

[12] Indeed, the CCO from September 9, 2019, clearly shows that appellant requested a continuance due to witness unavailability and waived speedy trial for that adjournment.

[13] The CCO from January 8, 2020, reveals that appellant requested a continuance in order to prepare for trial and that speedy trial was waived for that adjournment.

1. Speedy Trial Factors Under *Barker*

a. Length of Delay

This Court first considers the length of delay, measured from the time of arrest to commencement of trial. *See Fowlkes v. Commonwealth*, 218 Va. 763, 766 (1978). In the absence of delay that is presumptively prejudicial, "there is no necessity for inquiry into the other factors." *Kelley v. Commonwealth*, 17 Va. App. 540, 544 (1994) (quoting *Barker*, 407 U.S. at 530). Whether a delay qualifies as presumptively prejudicial "necessarily depend[s] upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-31. However, this Court has previously found that delays of one year or more are presumptively prejudicial. *See Ali*, 75 Va. App. at 35-36; *Miller v. Commonwealth*, 29 Va. App. 625, 633 (1999); *see also Doggett v. United States*, 505 U.S. 647 (1992) (finding that a delay approaching one year is presumptively prejudicial).

Here, where the time between appellant's arrest and trial exceeds two years, the length of delay is presumptively prejudicial and triggers consideration of the other *Barker* factors.

b. Reasons for Delay

Under the next factor—the reasons for delay—a court must make two separate determinations: first, what portions of the delays are attributable to the Commonwealth, and second, what portion of the delays attributable to the Commonwealth are justifiable. *See Ali*, 75 Va. App. at 36; *Fowlkes*, 218 Va. at 767. Appellant claims that his case was delayed by 383 days from his arrest to trial and that nearly 300 of those days are attributable to the Commonwealth.

A delay is *not* attributable to the Commonwealth if "it was requested by the defendant," if the defendant "concurred" in the delay, or if "one of the purposes of the delay was to enable the defendant to prepare" for trial. *Minitee v. Commonwealth*, No. 1054-19-2, slip op. at 8

- 20 -

(Va. Ct. App. July 12, 2022) (first quoting *Price v. Commonwealth*, 24 Va. App. 785, 790-91 (1997); then quoting *Arnold v. Commonwealth*, 18 Va. App. 218, 223 (1994); and then quoting *Heath v. Commonwealth*, 32 Va. App. 176, 182 (2000)); *see also Vermont v. Brillon*, 556 U.S. 81, 90-91 (2009) (holding that delays caused by defense counsel are charged against the defendant).

"Although any delay not attributable to the defendant is the responsibility of the Commonwealth for speedy trial purposes, 'different weights should be assigned to different reasons' for delay." *Ali*, 75 Va. App. at 42 (quoting *Barker*, 407 U.S. at 531). The three categories of fault for delay attributable to the Commonwealth are: (1) "deliberately improper" delay, (2) "merely negligent" delay, and (3) "valid and unavoidable" delay. *Id.*; *see also Minitee*, slip op. at 7 ("Whether a delay is justified depends in part on whether the Commonwealth acted in bad faith or negligently."). Deliberate delay[14] "should be weighed heavily" against the Commonwealth, whereas negligence[15] should receive less weight. *Ali*, 75 Va. App. at 42 (quoting *Barker*, 407 U.S. at 531). "[A] reason deemed 'valid' fully 'justif[ies] appropriate delay'" and thus does not weigh in appellant's favor. *Id.* (quoting *Barker*, 407 U.S. at 531).

Many routine periods of delay in a criminal case, such as the time between a defendant's arrest and the preliminary hearing, can be attributed to the Commonwealth "in the ordinary course of the administration of justice." *See id.* at 37. When "no evidence indicates that the prosecution caused the delay either intentionally or negligently," such delay "in the ordinary course" is deemed "valid and unavoidable," thus making it fully justified. *Id.* at 45. Similarly,

---

[14] Includes delay "caused with an intent to 'hamper the defense' or harass the defendant." *Ali*, 75 Va. App. at 42 (quoting *Barker*, 407 U.S. at 531).

[15] Includes "negligence in scheduling, understaffing of a prosecutor's office, or 'overcrowd[ing of the] courts.'" *Ali*, 75 Va. App. at 42 (quoting *Barker*, 407 U.S. at 531).

this Court has recently held that pandemic-related delays[16] attributed to the Commonwealth are "valid, unavoidable, and outside the Commonwealth's control." *Id.* Accordingly, such delays are deemed fully justified. *See id.* at 44 (finding that the COVID-19 pandemic "made it unsafe for all witnesses and other trial participants to come to court for a period of time, rendering them justifiably absent").

### *Apportionment of Delay*

This Court's review of the record in the light most favorable to the Commonwealth reveals that a large portion of delay between appellant's arrest on November 28, 2018, and his trial on July 27, 2021, is attributable to appellant based on his stand-alone and joint requests for continuances.

The forty-eight days between appellant's arrest on November 28, 2018, and the first scheduled date for a preliminary hearing on January 14, 2019, are attributable to the Commonwealth. The following 109 days—between January 14, 2019, and the preliminary hearing finally occurring on May 3, 2019—are not attributable to the Commonwealth because the parties made a joint request for a continuance on January 14, 2019, and appellant then made two additional requests for a continuance on February 21, 2019, and March 28, 2019.

Between appellant's preliminary hearing on May 3, 2019, and his first scheduled trial date on September 23, 2019, only 121 days are attributable to the Commonwealth for constitutional speedy trial purposes.[17] None of the 203 days between appellant's request for a continuance on September 9, 2020, and the trial date set for March 30, 2020, are attributable to

---

[16] These include the deliberate efforts of Virginia's judicial system "to balance public health with the administration of justice." *Ali*, 75 Va. App. at 45.

[17] The eight days of delay from May 23, 2019, to May 31, 2019, resulted from appellant's request for new counsel; the fourteen days between September 9, 2019, and September 23, 2019, are not attributed to the Commonwealth because appellant requested a continuance on September 9, 2019.

the Commonwealth.[18]  Because appellant requested a continuance on April 1, 2020, only two days of the total sixty-three days between March 30, 2020, and June 1, 2020, are attributable to the Commonwealth.[19]

On May 27, 2020, the case was again continued, at the Commonwealth's request, to August 3, 2020.  The sixty-three days from June 1, 2020, to the new trial date in August are attributable to the Commonwealth because appellant's April 1, 2020 continuance only waived speedy trial until June 1, 2020.  The subsequent adjournment from August 3, 2020, to February 1, 2021, is not attributable to the Commonwealth because appellant requested new counsel, asserted his right to a jury trial, and explicitly waived speedy trial for those 181 days.  On October 1, 2020, the trial court informed the parties that it could no longer hold a jury trial on February 1, 2021, due to court congestion caused by the COVID-19 pandemic.  As a result, the trial was rescheduled to May 5, 2021.

However, on April 19, 2021, both parties requested a joint continuance until June 28, 2021.  Thus, only the seventy-seven days between February 1, 2021 (the date appellant's explicit speedy trial waiver expired) and April 19, 2021 (the date the parties jointly agreed to adjournment) are attributable to the Commonwealth.  The remaining seventy days—from April 19, 2021, to June 28, 2021—are deemed waived by the April 19, 2021 joint continuance.  Accordingly, the final period of delay attributable to the Commonwealth is the thirty days

---

[18] The case was adjourned on September 9, 2019, at appellant's request, to January 13, 2020.  Appellant then made another adjournment request on December 30, 2019, and the case was continued until March 30, 2020.  *See Minitee*, slip op. at 8 (finding that if "one of the purposes of the delay was to enable the defendant to prepare," such delay is not attributable to the Commonwealth).

[19] In the April 1, 2020 CCO granting a joint continuance to June 1, 2020, appellant's counsel checked the box indicating a waiver of speedy trial time for that adjournment.

between June 28, 2021, and the start of appellant's trial on July 28, 2021, which resulted from the Commonwealth's April 23, 2021 motion to continue.

*Justification for Delay Attributed to Commonwealth*

In accordance with the determinations made above, 171 days of the total 341 days attributed to the Commonwealth fall squarely within the ordinary administration of justice. Those periods of delay, listed below, are deemed valid and fully justified because no evidence shows that the Commonwealth acted improperly:

- Forty-eight days from November 28, 2018, to January 14, 2019;[20]

- 121 days from May 3, 2019, to September 9, 2019;[21]

- Two days from March 30, 2020, to April 1, 2020.

The next two periods of delay attributed to the Commonwealth amount to 140 days and are justified as pandemic-related delays based on this Court's viewing of the record in the light most favorable to the Commonwealth and a lack of evidence that the Commonwealth behaved inappropriately. Specifically, this Court determines that (1) the sixty-three days of delay between June 1, 2020, and August 3, 2020, resulted from then-present health and safety concerns relating to COVID-19, and (2) the seventy-seven days of delay between February 1, 2021, and April 19, 2021, resulted from court congestion caused by the COVID-19 pandemic.[22]

---

[20] The delay between appellant's arrest and the first scheduled date for his preliminary hearing.

[21] The delay between appellant's preliminary hearing and his scheduled trial date. Appellant's motion for a continuance on September 9, 2019, cut off the Commonwealth's responsibility early.

[22] Although the trial court *sua sponte* vacated the February 1, 2021 trial date in October 2020 and rescheduled the trial for May 5, 2021, appellant's August 3, 2020 waiver of speedy trial time extended until February 1, 2021.

As a result of the foregoing calculations, only the final thirty days leading up to appellant's trial—from June 28, 2021, to July 28, 2021—are not justified because the Commonwealth acted negligently in selecting the June 28, 2021 trial date before confirming the availability of all necessary witnesses for that date.[23] Therefore, only those thirty days of delays count in favor of appellant.

### c. Assertion of Right

The third factor in the constitutional speedy trial calculus requires this Court to consider whether, and how, appellant asserted his right to a speedy trial. Despite having been incarcerated for over one year, appellant did not assert his right to a speedy trial until March 25, 2020, after the trial court issued a memorandum on March 16, 2020, suspending trials for thirty days and setting this case for status update on May 21, 2020.[24]

The trial court heard argument from both parties on March 30, 2020, regarding the speedy trial issues, after which it set the case for a bench trial to begin on April 6, 2020. Only four days after that decision—and four days before trial—appellant agreed to a joint continuance until June 1, 2020, even though that date went beyond the statutory speedy trial cut-off date of

---

[23] Although the Commonwealth requested a continuance on April 23, 2021, based on witness unavailability, the parties' prior joint continuance on April 19, 2021, tolled speedy trial until June 28, 2021, regardless of when the Commonwealth made its stand-alone request for adjournment.

[24] These facts are extremely similar to those in *Ali* where appellant did not assert his right "until after the Supreme Court had already begun entering judicial emergency orders restricting the ability of circuit courts to conduct jury trials." 75 Va. App. at 46. This Court ultimately concluded in *Ali* that appellant's constitutional right to a speedy trial was not violated.

April 15, 2020.[25]  Appellant also agreed to further continuances from August 3, 2020,[26] to February 1, 2021, and from April 19, 2021,[27] to June 28, 2021.

Although the trial court granted the Commonwealth's April 23, 2021 continuance request over appellant's objection, appellant did not assert his rights again until July 27, 2021—the day before trial commenced—when he filed a motion to dismiss for a violation of his constitutional right to a speedy trial.

### d.  Prejudice

As to the final factor—prejudice—the constitutional speedy trial right aims to protect three separate interests:  "(1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety; and (3) limiting the possibility that the defense will be impaired."  *Kelley*, 17 Va. App. at 546 (citing *Barker*, 407 U.S. at 532).  "The most important of these interests is the third one."  *Ali*, 75 Va. App. at 47.

When "the Commonwealth bears no fault in the delay and proceeds 'with reasonable diligence,'" appellant's speedy trial claim will fail "as a matter of course however great the delay" unless appellant can show "specific prejudice" to his defense (the third interest) or "some degree of prejudice for one of the first two interests."  *Ali*, 75 Va. App. at 47-48 (quoting *Doggett*, 505 U.S. at 656).  On the other hand, "[a] delay caused by governmental negligence 'occupies the middle ground.'"  *Id.* at 47 (quoting *Doggett*, 505 U.S. at 656-57).  However, "[t]o prove even generalized prejudice based on one of the first two interests . . . a defendant must

---

[25] At the March 30, 2020 hearing, defendant agreed with the trial court's determination that April 15, 2020, was the "expiration of the five months" permitted for statutory trial purposes under Code § 19.2-243.

[26] When appellant asserted his right to a jury trial and acknowledged before the trial court that such request would delay his trial until February 2021.

[27] When appellant agreed to another joint continuance.

establish a particularly prolonged or restrictive period of incarceration or a level of anxiety exceeding that faced by others awaiting trial." *Id.* at 48.

With regard to the first two interests, appellant only mentions in passing that the 383 "days of incarceration he served . . . are not attributable to any delay or continuance on his part."[28] Appellant's allegation of prejudice, however, rests more heavily on the third interest: that he was "greatly inhibited in presenting a defense" because his parents "were unable to come back to the United States from Bulgaria due to age and travel restrictions."

"To prove specific prejudice under the third interest . . . a defendant must show 'in what specific manner' factors such as missing witnesses . . . 'would have [impaired or] aided the defense.'" *Ali*, 75 Va. App. at 49 (quoting *United States v. Medina*, 918 F.3d 774, 782 (10th Cir. 2019)); *see Kelley*, 17 Va. App. at 547 (requiring "at least . . . a factual basis for believing" that the loss of a witness's testimony might have "adversely affected the defense"); *Beachem v. Commonwealth*, 10 Va. App. 124, 134 (1990) (holding that appellant's claim that his defense was impaired due to missing alibi witnesses was "sheer speculation" in part because he provided "no details" about when they moved or how he attempted to locate them).

Here, appellant merely claims that his parents "were set to testify in his defense to refute Ms. Letyvska's allegations" without offering any proof as to the details of that testimony and how it would have impacted his defense. This bare assertion is not sufficient on its own to establish that appellant actually suffered any prejudice to his defense.

---

[28] As explained previously, this Court determines that 341 days of appellant's incarceration are attributable to the Commonwealth, only thirty days of which resulted from the Commonwealth's negligence, whereas 624 days resulted from speedy trial waivers caused by appellant's actions.

## 2. Overall Assessment of *Barker* Factors

This Court first determined that the delay of 965 days from appellant's November 2018 arrest to his July 2021 trial was presumptively prejudicial under the first *Barker* factor, thus warranting consideration of the other three factors. Now, in weighing and balancing all the factors together, this Court finds their sum total rebuts the presumption and the evidence as a whole does not support appellant's claim that his constitutional right to a speedy trial was violated. *See Brown*, 75 Va. App. at 410 (explaining all four *Barker* factors are "related" and "must be considered together with such other circumstances as may be relevant" (quoting *Barker*, 407 U.S. at 533)).

Here, the majority of the delay—624 days—resulted from defendant's waivers of speedy trial, both explicitly and by operation of law.[29] Conversely, only 341 days of delay are attributable to the Commonwealth, the vast majority of which is justified based on pandemic-related reasons or the ordinary administration of justice. Such delays caused by "valid and unavoidable" reasons are not weighed against the Commonwealth when balancing the *Barker* factors. *See Ali*, 75 Va. App. at 42, 45, 51-52; *Barker*, 407 U.S. at 531.

Moreover, there is no evidence in the record that the Commonwealth should be faulted for any period of delay other than the thirty days between June 28, 2021, and July 28, 2021, which were the result of the Commonwealth's negligence in determining witness availability. "[T]he extent to which the government caused a portion of the delay intentionally or negligently is an important part of the balancing," but mere negligence should be weighed less heavily than deliberate delay. *Minitee*, slip op. at 9-10 (citing *Jefferson v. Commonwealth*, 23 Va. App. 652, 659 (1996)); *see also Ali*, 75 Va. App. at 42. Here, the Commonwealth's negligence only

---

[29] For example, joint continuance requests are treated the same as adjournment requests made solely by appellant for the purposes of speedy trial calculations. *See Minitee*, slip op. at 8.

delayed appellant's trial for thirty extra days. This fact does weigh against the Commonwealth to a degree, but not enough for this Court to find a violation of appellant's rights where the total period of time attributable to appellant is nearly double the amount attributable to the Commonwealth as a whole.[30]

Similarly, the third *Barker* factor—assertion of the right to a speedy trial—weighs only moderately in appellant's favor due to the timing and frequency of his assertions. Despite having already spent sixteen months in jail, appellant did not assert his right to a speedy trial until March 25, 2020, only after the Supreme Court issued its first emergency order and the trial court administratively adjourned this case to a status date on May 21, 2020, in connection with the COVID-19 pandemic. *See Ali*, 75 Va. App. at 46 (finding that appellant's "delay in asserting the right weighs against finding a violation" because this factor "deserves less weight than that to which it would have been entitled if [appellant] had raised it earlier, at a time before the pandemic severely limited the possibility that [appellant] could be tried promptly").

After hearing argument on the speedy trial issue on March 30, 2020, the trial court adjourned the case to April 6, 2020, for a bench trial, and appellant agreed with the trial court's determination that April 15, 2020, marked the "expiration of the five months" permitted for statutory trial purposes under Code § 19.2-243. Yet, only four days after that decision, appellant agreed to a joint continuance until June 1, 2020.[31] Appellant also made subsequent agreements

---

[30] As noted above, periods of delay attributed to the Commonwealth but deemed justified do not weigh in favor of appellant.

[31] *See Palmer*, slip op. at 11-12 ("[A] defendant's agreement with or failure to object to a court setting a trial date outside the statutory speedy trial period 'constitutes a continuance of the trial date under Code § 19.2-243(4).'" (quoting *Heath v. Commonwealth*, 261 Va. 389, 394 (2001))). *Compare Baker v. Commonwealth*, 25 Va. App. 19, 20-25 (reasoning that supplying the trial court with available trial dates was not the defendant concurring to the requested continuance), *aff'd on reh'g en banc*, 26 Va. App. 175 (1997).

to additional adjournments totaling 312 days.[32]  And despite objecting to the Commonwealth's continuance request on April 23, 2021, appellant did not file another motion to dismiss on speedy trial grounds until July 27, 2021, the day before trial.

Although waivers of speedy trial time resulting from appellant's decisions do not entirely excuse the Commonwealth from its constitutional obligations, they do assist this Court in weighing the *Barker* factors to assess whether appellant's constitutional right to a speedy trial was violated.  *See Ali*, 75 Va. App. at 46 (permitting a court to "weigh the frequency and force" of appellant's objections to delay (quoting *Rogers v. Commonwealth*, 5 Va. App. 337, 347 (1987))); *see also Commonwealth v. Jerman*, 263 Va. 88, 94 (2002) (holding that the "perceived futility" of objecting "does not excuse" a defendant from doing so because of their duty to create a record for appeal).  In doing so, this Court finds that appellant's continued acquiescence to adjournments since April 1, 2020, limits the weight given to appellant's assertion of his right.

Finally, appellant did not demonstrate that he suffered prejudice attributable to the above-described delays.  Appellant's primary argument regarding prejudice is the alleged impairment of his defense due to the missing testimony from his parents.  Appellant failed, however, to show the requisite "specific prejudice" because he did not proffer what testimony his parents would have given nor how such testimony would have assisted in his defense.  *See Tynes v. Commonwealth*, 49 Va. App. 17, 21-22 (2006) (holding that appellate court cannot determine prejudicial effect of excluded testimony without proffer of expected testimony).  Specifically, appellant did not allege that the testimony of his parents or any other witness would corroborate his version of events or contradict the testimony of Ms. Letyvska—which was corroborated by

---

[32] Sixty-one days from April 1, 2020, to June 1, 2020; 181 days from August 3, 2020, to February 1, 2021; and seventy days from April 19, 2021, to June 28, 2021.  These periods of delay are roughly equal to the total amount of time attributed to the Commonwealth throughout the entire case for justifiable reasons (not including the thirty days due to negligence).

Mr. Sobeck's testimony—regarding March 24, 2018, the date of the incident underlying appellant's convictions.

Appellant's claim of prejudice due to his incarceration is also unpersuasive where he simply claims that a long portion of that incarceration resulted from periods of delay attributable to the Commonwealth. As already determined above, only thirty days of the total 341 days attributed to the Commonwealth between defendant's arrest and trial are not justified due to the Commonwealth's negligent scheduling. Therefore, even assuming without deciding that appellant's claim constitutes proof of generalized prejudice for a "particularly prolonged or restrictive period of incarceration," it is nevertheless insufficient to support a finding that appellant's constitutional right to a speedy trial was violated when the collective weight of the *Barker* factors indicates otherwise. *See Ali*, 75 Va. App. at 51-52 (finding that appellant did not prove the requisite prejudice to establish a constitutional speedy trial violation where the period of delay chargeable to the Commonwealth was valid under *Barker*); *Doggett*, 505 U.S. at 656-57.

For the foregoing reasons, this Court finds that appellant has not established a violation of his constitutional right to a speedy trial under the *Barker* four-factor balancing test. *See Brown*, 75 Va. App. at 407 ("On appeal, a defendant must establish that on balance, the factors weigh in his favor." (quoting *Ali*, 75 Va. App. at 35)).

### D. Appellant's Fourth Assignment of Error: The Trial Court Erred in Denying Appellant's Motion to Strike the Charge of Abducting His Wife

In his fourth, and final, assignment of error, appellant argues that the trial court erred in finding the evidence sufficient as to the charge of abducting Ms. Letyvska where the act of abduction was merely incidental to appellant's assault of her. This Court declines to consider the merits of this argument because appellant did not preserve it for appellate review.

Rule 5A:18 precludes appellate review of an objection not "stated with reasonable certainty at the time of the ruling" by the trial court. This procedural default principle

specifically requires "that the argument asserted on appeal be the same as the contemporaneous argument at trial." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019); *see Clark v. Commonwealth*, 30 Va. App. 406, 411-12 (1999) (preserving one specific argument as to the sufficiency of the evidence does not allow argument on appeal regarding other sufficiency issues not raised at trial).

Appellant challenged at trial the sufficiency of the evidence regarding the charge of abducting Ms. Letyvska in his motion to strike and renewed motion to strike. However, he did so only on the grounds that Ms. Letyvska's testimony was not credible and that the evidence did not prove appellant's identity or his intent to deprive Ms. Letyvska of her liberty. Appellant did not argue before the trial court, as he does now on appeal, that the evidence was insufficient because it was merely incidental to the separate crime of assault against Ms. Letyvska.

Therefore, because appellant deprived the trial court of an opportunity to consider the specific grounds of the objection he now presents on appeal, this issue is not preserved for review by this Court. Accordingly, this Court affirms appellant's conviction for abducting Ms. Letyvska.

III.  CONCLUSION

For the foregoing reasons, this Court reverses and vacates appellant's conviction for felony abduction of J.O. and affirms appellant's remaining convictions.[33]

*Affirmed in part, reversed and vacated in part.*

---

[33] Because the parties have not briefed the matter of appropriate remedy with regard to appellant's second assignment of error, this Court need not decide whether the provisions of Code § 18.2-47(D) set out a lesser-included offense or a separate offense. Therefore, this Court offers no opinion as to whether, and by what means, the Commonwealth may initiate further proceedings against appellant for the abduction of J.O. if so inclined.